Judge Care,
delivered his opinion:
This is a writ of right. Robert Bolling, by his attorney, demands against the Mayor, Aldermen and Commonalty of the town of Petersburg, one tenement, containing two-fifths of an acre of land, with the appurtenances, &c. and bounded by Bowden’s lumber-house on the west, by Appomattox river on the north, &c. The count is in the form prescribed by the act of Assembly; the tenants have joined the mise on the mere right, and the jury have found a special verdict. They find, that in 1749, the father of the demandant was seised in fee of 300 acres, of which the land in controversy is parcel: that, in the same year, a public right of way was established on the pi’emises; and that subject to this right of way, he held them till his death, which was in 1777. They find, that he devised the land in controversy, to his wife, M. Bolling, for life, and after her death, to the demandant; and they find the will in hsec verba. They find, that the mother of the demandant died after the institution of this action: that the road established *569 in 1749, lias ever since remained, and been used as a pub-lie highway; and that the premises in dispute are part of the road, and have always been so used and considered: that neither the demandant, nor any other, has been in possession of the land, exempt from a right of way, since the year 1749; but, that the demandant, and those under whom he claims, were in possession of the fee and freehold down to the year 17S7; and that the corporation has been in possession thereof, since the erection of the wharf in 1787; which, and the right of way, is the only possession which ever has been adverse to the right of the demandant. The jury find, also, the ordinance with respect to the wharfage, and the petition to the Legislature, each in hsec verba; also, the different laws concerning Petersburg, to be taken as part of the verdict, (by consent,) without being set out. They find, that the demandant signed the ordinance as Mayor, was one of the committee who reported the petition, was an active member in promoting the establishment of the wharf, and the fee simple owner of a large portion of the lots in Petersburg; many of which he has since sold, some on long leases, some in fee. They find, that the land in controversy, is the same land described as the public wharf in Petersburg, in the acts of Assembly, in the ordinance of the corporation, and in the petition herein above set forth.
Upon this finding, the Superior Court of Law decided, that the law was for the tenants; and it was adjudged, “ that the tenants shall hold the land and tenement demanded against them, to them and their successors, quit of the,demandant and his heirs forever,” &c. From this judgment, the appeal is taken to us.
It seems to me, that upon the case made by the special verdict, the demandant must succeed, unless he be defeated, either by the life of his mother, at the institution of the suit; the establishment and continuance of the high-way; or the erection and use of the wharf, taken in connexion *570 with the acts of Assembly, and the acts of the demandant relative thereto. I will examine these points.
is contended, that the jury having found the devise to ^rs- Bolling for life, and. that she was living at the institution of this suit, it follows, that the demandant cannot have that possession or seisin required by the rules of the common law, and the words of our statute, to support his action. It may be remarked here, that possession and seisin are synonimous terms, both as used by our act, and by the writers of the common law. Co. Litt. 153, a. This seisin, the books tell us, must be a seisin in deed of the fee. They say also, that there is an actual seisin in. deed, and a constructive seisin in deed; the first constituted by the'pedis positio; the second, by a patent or deed; and either, sufficient to support the action. The mise joined on the mere right, puts in issue this question; which party has the better title ? It is a comparison of the rights in controversy. If the demandant prove an actual seisin in deed, the tenant cannot defend himself by shewing a better outstanding title in another, because this is not the issue, and such evidence does not disprove the actual seisin of the demandant. But where the demandant relies on a constructive seisin in deed, the tenant may shew an elder patent, or better title, in another; because this destroys the constructive seisin, and leaves the demandant no ground to stand on; the tenant’s actual seisin sufficing for his protection, till a better title be shewn. See Green v. Liter, 8 Cranch, 231; and Green v. Watson, 7 Wheaton, where this subject is ably and learnedly treated.
In the case at bar, the assise have found the demandant in possession of the fee and freehold. I understand this to be, not a constructive, but an actual seisin in deed, a pedis positio. This is clear to me, from the manner and substance of the finding. It is found, first, that Robert, the father, held and possessed the land in his demesne as of fee, subject, after 1749, to the right of way; then, that Robert, (the demandant) and those under whom he claims. *571 were in possession of the fee and freehold, down to 1787: that the corporation have been in possession since; and that this (possession) and the right of way, is the only possession that ever has been adverse to the demandant’s right. Surely it will be admitted, that this finding amounts to an actual seisin in deed, in the father. If so, it gives to the seisin of the son the same character, couples them together, describes them by the same kind of language; and further, excludes every other possession, save only the right of way and the possession of the corporation. Can it be doubted, that the finding gives to the corporation the actual seisin in deed, since 1787? The seisin from 1749 to 1787, is found with equal strength and clearness, in the demand-ant and those under whom he claims. (That is, in his father till 1777; and in the demandant, thence till 1787.) This actual seisin in deed, being found in the demandant, it would not avail the tenants, to shew a better outstanding title in his mother, as that would not disprove his seisin.
But in truth, it is of little moment, whether we consider the seisin found in the demandant, actual, or constructive. The one or the other it assuredly must be, and either is sufficient to support the action. The finding of seisin in the demandant negatives, by inevitable consequence, the seisin of his mother; for, they could not both be simultaneously seised. Her being in life, therefore, at the commencement of the action, opposes no bar to his recovery, unless the objection which I will next consider, be sound. That is this;—Although the jury find the seisin of the demandant, they find also, that his mother was tenant for life, and living when the action was brought; and as they find no deed or surrender of any kind, of her life-interest to the demandant, his seisin was wrongful as to her; and, being of that character, could not unite with his fee in remainder, so as to enable him to maintain a writ of right. This objection I have diligently examined, and I am clear, that it must be pronounced unsound, if we are to be guided by the opinions which the fathers of the common law have *572 delivered to us. The jury have expressly found, that the demandant was seised of the fee, till the corporation entered upon him. If we must conclude, because no surrender h>s m°ther’s interest be found, that he disseised her, still as a disseisor he was seised of the fee; and though, if his mother had entered upon him, he could not, in a contest with her, recover on his seisin, because her’s was the better right; yet where he was entered on by the corporation, having no better right, his seisin, as against them, was sufficient to maintain a writ of right. For this doctrine, I refer to Littleton, § 481, 482, where it is laid down, that if he in remainder enter upon tenant for life, and disseise him, and the tenant entereth upon him, and then lose the land by a recovery in a feigned action, and die; he in remainder may well have a writ of right against the recoveror, because the mise shall be joined only on the mere right. Yet in this case, the seisin of him in remainder, was defeated by the entry of tenant, for life. In his comment on this passage, my Lord Coke says, “ Here a disseisin gotten by wrong, and defeated by him, that right hath, is sufficient to maintain a writ of right against the recoveror in this case, for albeit the seisin is defeated, between the lessee for life, and him in remainder, yet having regard to the recoveror, who is a mere stranger and hath no title, it is sufficient against him.” And he puts this case, among others: ce If lands be given in tail, remainder to A. in fee; the donee die without issue, his wife privcment enseint; A. entereth; the issue is born and entereth upon him, and dieth without issue; A. shall have a writ of right, of the seisin which he had.” These eases seem me, fully to sustain the position, that though Bolling considered the disseisor of ffiis mother, yet the seisin thus gained by him, was sufficient to maintain his writ of right against the corporation, who had disseised him, and shewed no right whatever.
The next question is, as to the public highway. Does this disable the demandant from recovering the land? It *573 •certainly would not, In England, as many cases shew. I will cite one or two. Lade v. Shepherd, 2 Strange, 1004. The plaintiff built a street on his land, which thcuceforward was used as a highway. The defendant, having land parted from it only by a ditch, laid a bridge over the ditch, the end whereof rested on the highway. The plaintiff brought trespass for this. It was insisted for the defendant, that the making of it a street was a dedication of it to the public, and therefore, though the defendant might be liable to an indictment for a nuisance, yet the plaintiff could not sue him lor a trespass on his private property. Sed per curiam. It is certainly a dedication to the public, so far as the public has occasion for it, which is only for a right of passage. But it never was understood to transfer the absolute property in the soil. Goodlitle v. Alker, &c. 1 Burr. 143, ‘‘Ejectment.” - A special verdict, finding that the land, (which is described as so many feet in width, and so many in breadth,) was a public street and King’s highway. Lord Mansfield says, “ 1 Rolle’s Abridg. 392, Letter B. is express, that the king has nothing but the passage for himself and his people; but the freehold and all the profits belong to the owner of the soil.” Ho continues, “ so do all the trees upon it, and mines under it, (which may be extremely valuable.) The owner mar carry water in pipes under it. The owner may get his soil discharged of this servitude or casement of a way over it, by a writ of ad quod damnum. It is like the property in a market or fair. There is no reason why he should not have a right to all remedies for the freehold, subject still, indeed, to the servitude or easement. An assise would lie, if he should be disseised of it; an action of trespass would lie for an injury done to it. I see no ground, why the owner of the soil may not bring ejectment, as well as trespass. It would he very inconvenient to say, that in this case he should have no specific legal remedy; and that his only relief should he repeated actions of damages for trees and mines, salt springs, and other profits or *574 dei’ground. It is true, indeed, that he must recover the-land, subject to the way; but surely, he ought to have a specific remedy to recover the land itself, notwithstanding being subject to an easement upon it.” See also, 1 Wits. 107; 6 East. 154; Bac. Abr. tit. “Highways,” Letter B. 494. It is clear from these cases, (and others might be added,) that in England, the right of way has been considered but an easement, not affecting the right of soil.
But it is said, that in this country we act on a more liberal scale; that the Court will look to the great principles of -public policy, and give them effect; that the convenience of the community requiring highways, they must be had; and as a mere right of way is not sufficient for the full enjoyment of them, we must consider the Commonwealth as vested with a base fee in all public highways.
I rather think this argument would have been more appropriately addressed to the Legislature. Our business is with the law as it is; and where the power to be exercised is one of so important a character, as the taking away the property of the citizen—divesting him of his eminent domain in the soil,—I could not consent to take the step, unless I saw myself justified by some clear principle of the common law, or some plain enactment of the statute. The English cases are pretty strong evidence, that the common law confers no such power. I have looked into our statutes, and I can find nothing there to countenance the idea, that when a road is established, the fee in the soil, either simple or base, is vested in the Commonwealth. On the contrary, I think it is obvious, that a right of way is all that the public requires, leaving the whole fee in the owner of the soil. The law directs, that when application is made for a road, viewers shall be appointed, who shall report the conveniences and inconveniences thereof. If the Court shall be of opinion, that the road will be convenient, they shall order summonses to the owners and tenants of the land, through which it is proposed *575 to' conduct it; and if any proprietor or tenant desire it, a writ of ad quod damnum shall issue, &c. The sheriff shall impannel twelve discreet freeholders, &£c. who shall be charged to enquire what damage it will be of to the several owners, &c. taking into estimation, as well the use of the land to be laid open for a road, as the additional fencing, &c. Here we see that it is for the use only of the land, that the owner is compensated. Of course, he can part with nothing more; and with that, only while it is used as a public road. In New-York, they have a law using stronger terms than ours, “ that it shall not be lawful for the commissioners to lay out a road through any person’s land, without either the consent of the owner, or paying the true value of the land, &e. and damages, &c.” and it is considered there, that the establishment of a road does not divest the owner of his fee in the soil, but is a mere Casement or servitude. Cortelyou v. Van Brandt, 2 Johns. Rep. 357.
With respect to the third point, the wharf; it is contended 1st, that the acts of Assembly on this subject, vest the fee in the corporation: 2d, that the demandant, by his own acts, has estopped himself from denying that right: 3d, that from the length of time, that the corporation have been in the uninterrupted possession of the wharf, we must presume a grant or release.
As to the first, a careful examination of the acts of Assembly has convinced me, that they do not affect the fee, in the slightest degree: that it never entered into the mind of the Legislature, that the language they used could be understood as intending to take from the demandant his land, and vest it in the corporation. It would require strong words indeed, to justify the imputation of such intention to the Legislature. Here, there are none. It is not worth while, therefore, to enquire whether they could pass such a law.
2. As to the estoppel. The demandant, as Mayor, signed the ordinance set out in the verdict. He was a mem *576 her of the Common Council, and one of the committee wjj0 rep0r(;ec[ the petition to the Legislature. He was ac-five in the establishment and erection of the wharf, and a ^ee simple owner of a large portion of the lots in the town, many of which he has since sold. These are the acts of the demandant, which are relied on to estop him now, from contending that he is not divested of the fee simple, and the same vested in the corporation.
It must be remembered, that the question here, is purely legal, arising on a special verdict in a writ of right, and has nothing to do with the weight or effect, which equity might give to the acts of the demandant. Upon the weight or. effect of those acts, in that forum, I wish it clearly understood that I do not mean, in the slightest degree, to pronounce. Do they amount to a legal estoppel? That is the simple question. Testing them by the definition of an estoppel given in the books, I cannot discover a single feature of resemblance between them. Co. Litt. 352, says, “Every estoppel must be reciprocal, that is, must bind both parties.” There is no reciprocity here. The obligation (if any,) is all on one side. Again, “Every estoppel, because it concludeth a man to alledge the truth, must be certain to every intent, and not to be taken by argument or inference.” Here, there is no certainty, but every thing must be taken by argument and inference, and a very strained inference too, to bring it to any thing like an estoppel. Estoppels are odious in law, as tending to shut out truth; and therefore, Judges are said to beastute to unshackle the case from them. Here, the utmost astuteness would fail to bring the case within the doctrine.
But it was said in the argument, that the acts of the demandant, and his looking on in silence, while the corporation was expending money in building the wharf, amounted at least to a tacit agreement that they should have it. If this were so, (which I do not mean either to affirm or deny,) has it the effect to convey the legal title? Does is support the mise joined by the tenants ? Assuredly not.
*577 3. The next point is, length of time. It is said, that the corporation having, for twenty-seven years, been in the uninterrupted possession of the wharf, we ought to presume a conveyance from the demandant.
Special verdicts leave no room for presumption. To presume a deed here, would be, I think, to contradict the verdict, and violate the express words of the statute of limitations. The verdict finds the possession of the corporation, hut nothing that amounts to a claim even of the fee simple. On the contrary, the ordinance and the petition to the Assembly, rest their claim to the use of the wharf on this, that the ground it occupied was part, of a public highway, only thirty feet wide, with the river on one side, and a canal on the other; so that their occupation of it, as a wharf, could not interfere with the rights of adjacent landholders. Their idea seems to have been, that by the establishment of the highway, the fee was vested in the public; and as the wharf did not interrupt the public’s right of passage, nor (from the local situation) interfere with private rights, no one could object to their possession and use of the wharf. To presume a grant, upon this finding, would be to presume contrary to their claim. The shortest period, to which the statute limits the bringing a writ of right, is thirty years. But if we say, that twenty-seven years’ possession gives a fee simple, do we not violate this law, and enact, that a writ of right cannot be prosecuted with effect, after twenty-seven years ? It seems so to me.
Several other objections were taken, in the argument, to different parts of the demandant’s case, some of which, it may be proper to notice.
It was said, that if it be decided, that the corporation has not the base fee contended for, then there is no tenant to Ihe prmvipe, as there is no disseisin found. The tenants have joined the mise, whereby they defend the tenement aforesaid, (describing it as in the count,) as of right, and put diemselves upon the assise, and pray that recognition may he made, whether they have greater right to hold the tene *578 ment aforesaid, as they now hold it, or the demandant to ¡lave ag ¡10 UOw demandeth it. After this, it seems to me quite too late to say, that there is no tenant to the prxC^PC- The tenants have, on the record, admitted themselves tenants of the freehold, and cannot afterwards deny it. That this was so, at common law, all admit. But, it was urged in the argument, that our statute had changed the common law, in this respect: that, under it, non-tenure might be given in evidence upon the mise joined; and the case of Hyers v. Wood, 2 Call, 488, was cited, as directly In ¡joint. It is true, that the question was raised in that case, and that the Court did decide that non-tenure might be given in evidence on the mise joined.
For the decisions of this Court, I am sure no man feels more respect than I do; nor can any one be less disposed to disturb questions considered as at rest. But, this is a single decision, by a bare Court, on a point for the first time before it. Our predecessors, (like ourselves,) were without the aid of books to resort to; and it is not wonderful, that, under such circumstances, they and we should sometimes mistake the law. If, at any time, I venture to dissent from their opinions, it will be with real diffidence, and under a strong conviction of duty. It is a liberty which we sometimes feel obliged to take with those who have-gone before us; which our successors will, no doubt, take with us; and which, so far as regards myself, I am free to admit, they may have frequent occasion to take. The Judges, in deciding this question, took different grounds. Without stating them, I will give, as briefly as I can, my own ideas on the subject.
The end of all pleading is to attain certainty, and prevent surprise. Hence it is a fundamental rule, that the issue between the parties shall present a single, individual, simple point. To this point, the evidence must be confined. To this point, the verdict must respond. On this point, the judgment must be given. In a writ of right, (as in all other actions) the tenant may plead matter, either *579 ni abatement of the writ, or in bar of the action. Of the first kind are non-tenure, joint tenure, sole tenure, &c. Of the second, there might be, at common law, either speeial pleas, as estoppel, collateral warranty, &c. or the tenant might join, the mise on the mere rigid. There had grown up, about this most important writ, so many niceties of form and subtleties of practice, as to render it exceedingly dilatory, perplexing and hazardous. It was to disentangle it of these, that our act was passed. This is clear from the title; “an act for reforming the method of proceeding in writs of right.” The preamble too, states, “that for trial of disputed titles to lands in a more simple mode, than that which hath most commonly been used of late,” &e. This being the avowed object of the law, we cannot presume that the Legislature had any other: that they intended to vary the rights and legal standing of the parties, or to change the nature and effect of the pleadings. The statute first prescribes the writ; then enacts, that the count shall be in the form which it sets out; “to which count, the tenant may plead in this form, or to this effect,’ (sotting out the form used for joining the mise,) “and to such plea, the replication shall be,” (in the form given) 61 and at the trial, any matter may be given in evidence, which might have been specially pleaded.” The idea has been taken up, that may, (the tenant may plead, &e.) means shall; making it compulsory on the tenant to join the mise, and taking away all pleas in abatement: that to remedy this mischief, the law enables him to give in evidence on the mise joined, any matter, which might have been specially pleaded; and it is concluded, that as non-tenure might be specially pleaded, it may be given in ewidence at the trial.
In my mind, the premises and the conclusion are wholly unsound. May does not, iu this case, mean shall. The tenant is not prohibited from pleading in abatement; he cannot give non-tenure in evidence on the miso joined. Any one who will look at the law will «ee at once, why. *580 in three sentences following each other, the Legislature, }n first and third, have used the word shall, and in the second, may. One form would suffice for every count; therefore, “the demandant shall count in the following form.” The tenant’s defence might rest on matter in abatement; he might not hold the land claimed at all, or he might hold by a different tenure. The act, meaning to leave him at full liberty to plead these matters, drops the imperative shall, and adopts the permissive may; as if saying, provided the tenant chooses to rely on the mere right, he may use this form of plea. If the plea be used, then there can be but one form of replication; and the act resumes the style of command, “ the demandant shall re - ply in the following form.” This, I think, would have been clear to all, who had been content to look at the plain words and meaning of the law; instead of perplexing the question, by resorting to the rule of construction, which, in some cases, gives to may the force of shall. What is that rule? It seems to-be this: “that may, when used in statutes, means must or shall, only in cases where the public interest and rights are concerned; and where the public or third persons have a claim de jure, that the power shall be exercised.” Newburg Turnpike Company v. Miller, 5 Johns. Ch. Rep. 113, and the cases there cited. This rule, surely, has nothing to do with our case.
But it is said, that though may should not be construed shall; though the tenant may still plead non-tenure in abatement; yet he is not obliged to do so, as the law gives him a concurrent power, to give it in evidence on the mise joined.
I cannot but think, that this has been a hasty opinion, taken up without reflecting on the nature of the mise, or the consequence of admitting such evidence. If non-tenure be pleaded, it abates the writ; the judgment is, that the tenant go thereof, without day. This, all admit, is no bar to another action; and if Littleton be correct, it is a very different thing. For he says, § 691, “The do *581 mandan!, after tliat judgment is given, that the tenant shall go without day, may enter into the tenements demanded, the which shall be as great an advantage to him, as if he had judgment to recover against the tenant.” But where the misé is joined on the mere right, the judgment must be final between the parties. The jury must find, and the Court must give judgment, that either the demandant or the tenant, has the more right to hold the premises; and if on this issue, non-tenure is given in evidence, you give to it the effect of a plea in bar, instead of abatement.
Again. You take the demandant perfectly by surprise. The tenant, by his plea, has admitted that he holds the land, and says he has the better right. The demandant replies, that he has the better title. This is the issue. All the evidence, according to the settled rules of pleading, must relate to it. The demandant comes prepared to prove his right; when the tenant springs a mine upon him, and blows him up, by evidence that he does not hold the land at all. Could surprise be more complete ? But mark the absurdity in another point of view. The tenant pleads that he holds the land, and has the better right. In support of this plea, you suffer him to prove that he does not hold it at all; and on this evidence, the jury find that he hath the better right to hold the laud, as he holdcth it; and the Court gives judgment accordingly,—a judgment conclusive upon the right. Is it possible that the Legislature intended to produce these consequences; and that, under the sole idea of simplifying the proceedings ? Assuredly not. When the law says, that any matter may be given in evidence which might have been specially pleaded, it clearly means, (I think,) that any matter which, at the common law, would have constituted a special bar, may, on the general issue, be given in evidence. This construction makes the law consistent, violates no rule of pleading, produces no absurd or unjust consequence.
In further evidence that this construction, so clearly resulting from the law itself, is the true one, and that the *582 Legislature had not the slightest idea of unsettling the cstablished rules, and order of pleading, the following eonsideration seems to be decisive. In 1734, and again in 1748, the Legislature passed acts (see 4 Stat. at Large, 402; 5 Stat. at Large, 416,) expressly recognizing pleas of abatement in writs of right.
The last law enacts, that in all real actions, &c. after one imparlance, (unless the tenant shall plead non-tenure, joint-tenancy, or several tenancy, in abatement, and then, after such plea shall be over-ruled,) he shall put himself "upon the grand assise, and the mise shall be joined upon the mere right, “and be tried at the next Court by 16 jurors, to be summoned, tried and sworn, as in all other actions; and to remove all delays and groundless pretences in saving the default of the tenant, no excuse shall be admitted but non-summons; and such excuse being allowed, he may imparl, and at the next Court, shall either plead in abatement, or put himself upon the grand assise as aforesaid.” Now, we cannot possibly suppose that the Legislature of 1786, was ignorant of the existence of this law. That they did not mean to repeal it, is most clear. The irresistible conclusion seems to be, that they intended to leave pleas in abatement exactly where they stood. These pleas were not conclusive of the right, and formed no part of those perplexing subtleties, which it was the purpose of the law to reform. It was “ for the trial of disputed titles to land in a more simple way,” (as the preamble tells us,) that the law was passed. A plea in abatement never tries the title; therefore, the law takes no notice of them, but regulates those proceedings only, which put the mere right in issue.
In further support of this opinion, I will avail myself of the highly respectable authority of the Federal Court, deciding land titles from Kentucky, depending upon the laws of Virginia, and bringing into question the construction of the very act I have been considering. Green v. Liter, 8 Cranch, 229, Story, J. delivering the opinion of *583 the Court, says, “ It is clear, at the common law, that non-tenure, joint-tenure, sole-tenure, and several tenure, were good pleas in abatement to a writ of right. But they could only be pleaded in abatement; for the tenant, by joining the mise, or pleading in bar, admitted himself tenant of the freehold. Such pleading in bar was an admission that he had a capacity to defend the suit; and he was estopped by his own act, from denying it. The act of Virginia of 1786, ch. 27, reforming the proceedings on writs of right, was not intended to vary the rights or legal predicament of the parties. It did not, therefore, intend to change the nature and effect of the pleadings; and notwithstanding that act, the tenant shall have the full benefit of the ordinary pleas in abatement. It is true, that the act provides, that the tenant, at the trial, may, on the general issue, give in evidence any matter, which might have been specially pleaded. But this provision is manifestly confined to matters in bar. It would he absurd to suppose, that the Legislature meant to give to a mere exception in abatement, the full effect of a perfect bar on the merits, which would be the case, if such an exception would authorise a verdict for the tenant, on the issue joined on the mere right.” See also, Liter v. Green, 2 Wheat. 306, where it is distinctly; laid down, that matter in abatement must be pleaded, and cannot be given in evidence on the mise joined. I have been thus full on this point, because I was anxious to shew the strength and solidity of the ground, on which I have ventured to dissent from a decision of this Court,
Another objection taken by the counsel for the tenants, is, that the count sets out defectively the boundaries of the land. At the common law, the tenant, if uncertain as to the premises demanded, might pray a view before pleading; that is, that the jury, or a part of them, might have a personal view of the tenement. If he pleaded, he waived the view, and could not afterwards object for uncertainty. Britt. Ch. 45; Fitz. N. B. 178. View's were greatly abused, to the purposes of delay, as may be seen from what *584 Lord Mansfield says, 1 Burr. 252; and the rule there established by the Court, to correct the abuse. With us, they were abolished as early as 1734; 4 Stat. at Large, To supply the information afforded by a view, our Legislature enacted, that the demandant should insert in his count, the boundaries of the land. If the tenant be uncertain as to the land demanded, and. the count be too defective to give him that knowledge, which, at common law, he would derive from the view, he may demur to the count. But as, by a plea at common law, he waived the view, and took upon himself a knowledge of the land; so, under the statute, by joining the mise, he equally waives all objection to the description of the land in the count, and admits himself to hold the premises demanded. Having thus, on the record, admitted himself tenant to the prsecipe and gone to issue on the mere right, he can never after object to the count. This Is clearly the doctrine of common sense, as well as common law; and is, I think, strongly supported by the decisions of this Court. The case which is most satisfactory on this point, is Lovell v. Arnold, 2 Munf. 167. There, the count demanded a tenement containing sixty acres, included in a larger tract of 850 acres, which (850 acres) it described by metes and bounds; but, of the 60 acre tenement, there was no further description. Now, I hold, that nothing could be more uncertain than this description. If it had been 60 acres, part of a tract of 100,000; or 60 acres within a county, whose boundaries were given, it would have afforded just as much information as to the individual 60 acres demanded, as this count did. The tenant joined the mise, and in his plea described the tenement in the precise terms of the count. The verdict was for the demandant, and the Court rendered judgment. On appeal, it was objected here, that the boundaries were defectively set out in the count. Judge Brooke, (after .stating the objection,) says, “ upon a demurrer to the count, it is possible these objections might be entitled to great consideration; but the tenant admits the descrip *585 t'ion to be sufficiently certain, by his plea, &e. The objections of this kind, (he adds) which were urged in Turberville v. Long, were much stronger, but they were over-ruled.” Judge Roane says, “ As to the sufficiency of the count in this case, I am inclined to concur in the opinion just delivered, upon the authority of the decisions in this Court, of Turberville v. Long, and Fagg v. Beverley.” Judge Fleming says, “With respect to the first point, the count demands 60 acres, &c. included in a larger tract of 850, the bounds of which (850) are sufficiently described. The tenant, in his plea, after describing the land precisely as it is in the count, ‘putteth himself on the assise, and prayeth recognition to be made, whether ho hath greater right to have the tenement aforesaid, with the appurtenances, as he now holdeth it, or the said Elisha ¡Arnold, to have it, as he now demandeth it;’ and issúe thereupon, in due form, which seems to me, a sufficient acknowledgement of the land in question.” These opinions abundantly prove, that after joining the mise, it does not lie with the tenant to object to the count for uncertainty. But yet if no boundaries are set out in the count, and nothing occurs in the progress of the cause (such as the plea of the tenant, a survey, or the finding of the jury, &c.) to supply the defect, and afford such certainty as would authorise a judgment, and enable the sheriff to deliver possession; the Court might, I presume, refuse to render judgment, and send the cause back for a repleader, the issue being immaterial. The entry, in such case, would be, that the parties replead (quod paries replacitent) and they must begin again at the first fault, which occasioned the immaterial issue. 2 Tidd. 829; 3 Salk. 579; 1 Chitt. Pl. 631, 2, 3. This, I incline to think, would be the correct course, though I do not give a positive opinion on the point, as that is not necessary to the decision of the case before us. However defective the count might bo considered here (and I do not stop to enquire whether it be so or not,) the finding of the jury has given so precise and accurate a description of the tenement *586 demanded, that there cannot be the slightest doubt on the questions of identity and certainty; and the cases of Long v. Turberville, and Lovell v. Arnold, already cited, shew that the want of description in the count, may be supplied by the finding of the jury.
On every view of the case, therefore, I am clearly of opinion, to reverse the judgment of the Court below, and render judgment for the demandant.
The other Judges concurred, and the judgment was reversed.*

 Judge Coaiteb, absent.