Story, J.,
 

 delivered the opinion of the court, as follows:—
 

 This is a writ of right, brought by the demandant against the tenants, to recover seisin of a large tract of land set forth in the count. At the trial in the circuit court for Kentucky district, several questions arose upon which the court were divided ; and these questions are now certified for the opinion of this court.
 

 As to the first question, we are satisfied, that the circuit court had jurisdiction of the cause. Taking the 11th and 20th sections of the judiciary act
 
 *155
 
 of 1789, ch. 20, in connection, it is clear, that the jurisdiction attaches where the property demanded exceeds |500 in value ; and if, upon the trial, the demandant recover less, he is not allowed his costs ; but, at the discretion of the court, may be adjudged to pay costs.
 

 As to the second question, we are of opinion, that, at common law, a writ of right will not lie, except against the tenant of the freehold demanded. If there are several tenants, claiming several- parcels of land, by distinct titles, they cannot lawfully be joined in one writ; and if they are, they may plead, in abatement of the writ. If the demandant demand against any tenant more land than he holds, he may plead non-tenure as to the parcel not holden ; and this plea, by the ancient common law, would have abated the whole writ. But the statute 25 Edw. III., St. 5, c. 16, which may be considered as a part of our common law, having been in force at the emigration of our ancestors, cured the defect, and declared, that the writ should abate, only as to the parcel whereof non-tenure was pleaded, and admitted or. proved. In fact, the act of Virginia of 1792, ch. 125, which is in force in Kentucky, enacts substantially the same provision as the statute of Edward.
 

 *But it is supposed, in argument, that the act of Kentucky, to amend proceedings in chancery and common law, which provides that if the plaintiff at law shall prove part of his demand or claim set up in his declaration, he shall not be nonsuited, but shall have judgment for what he proves, entitles the demandant in this case to join parties who hold in severalty by distinct titles. To this doctrine the court cannot accede. At common law, in many instances, if the party demanded in his writ more than he proved was his '-right, he lost his action by the falsity of his writ. It was to cure this ancient evil, that the act of Kentucky was made. It enables the party to recover, although he should prove only part of the claim in his declaration. But it does not intend to enable him to join parties in an. action, who could not be joined at the common law. It could no more cnti-. tie a demandant in a real action to recover against several tenants, claiming, by distinct and separate titles, than it could entitle a plaintiff to maintain a, joint action of
 
 assumpsit,
 
 where the contracts were several and independent. Infinite inconvenience and mischief would result from such a construction ; arid we should not incline to adopt it, unless it were unavoidable.
 

 As to the third question. It is clear, at the common law, that non-tenure, joint-tenure, sole tenure and several tenure, were good pleas in abatement to a writ of right. But they could only be pleaded in abatement ; for the tenant, by joining the
 
 mise,
 
 or pleading in bar, admitted him-self tenant of the freehold. Such pleading in bar was an admission that, he had a capacity to defend the suit; and he was estopped, by his own act, from denying it. The act of Virginia of 1786, eh. 27, reforming the proceedings on writs of right, was not intended to vary the rights or legal predicament of the parties. It did not, therefore, intend to change - the. nature and effect of the pleadings ; and, notwithstanding that act, the tenant shall still have the full benefit of the ordinary pleas in abatement. It is true, that the act provides that the tenant, at the trial, may, on the general issue, give in evidence any matter which might have been specially pleaded. But this provision is manifestly confined to matters in bar. It would be n, t absurd, to suppose, that the legislature meant to give to a mere *es- -* ception in -abatement the full effect of a perfect bar on the -merits ,
 
 *156
 
 ■which, would be the case, if such an exception would authorize a verdict for the tenant on issue joined on the mere right. The time and manner of' filing the pleadings must, of course, be left to the established practice and rules in the circuit court.
 

 As to the fourth point, we are of opinion that, under the act of Virginia of 1786, the tenant may, at his election, plead any special matter in bar, in a writ of right, or give it in evidence on the
 
 mise
 
 joined. The act is not deemed compulsive but cumulative.
 

 The fifth question is that which has been deemed most important; and to this the counsel on each side have directed their efforts with great ability. It is clear, by the whole current of authority, that actual seisin, or seisin in deed, is, at the common law, necessary to maintain a writ of right. Nor is this peculiar to actions on the mere right. It equally applies to writs of entry ; and the language of the count, in both cases, is, that the demandant, or his ancestor, was, within the time of limitation, seised in his demesne as of fee, &c., taking the esplees, &c. It is highly probable, that the foundation of this rule was laid in the earliest rudiments of titles at the common law. It is well known, that in ancient times, no deed or charter was necessary to convey a fee-simple. The title, the full and perfect dominion, was conveyed by a mere livery of seisin, in the presence of the vicinage. It was the notoriety of this ceremony, performed in the presence of his peers, that gave the tenant his feudal investiture of the inheritance. Deeds and charters of feoffment were of a later age ; and were held not to convey the estate itself, but only to evidence the nature of the conveyance. The solemn act of livery of seisin was absolutely necessary to produce a perfect title, or as Fleta calls
 
 it, juris et seisinoe conjunatio.
 
 But, whatever may be its origin, the rule as to the actual seisin has long since become an inflexible doctrine of the common law.
 

 It has been argued, that the act of Virginia, of 1786, ch. 27, meant, in this respect, to change the doctrine of the common law, because that act has given the form of *the count in a writ of right, and omits any r*245 allegation of seisin and taking esplees. There is certainly some L countenanee in the act for the argument. But, on mature consideration, we are of opinion, that it cannot prevail.
 

 The form of joining the
 
 mise
 
 in a writ of right, is also given in the same act; and that form includes the same inquiry, viz., “ which hath the greater right,” as the forms at common law. It would seem to follow, that the legislature did not mean to change the nature of the facts which were to be inquired into, but only to provide a more summary mode of proceeding. The clause in the same act allowing any special matter to be given in evidence on the
 
 mise
 
 joined, may also be called in aid of this construction. That clause certainly shows that it was not intended to relieve the demand-ant from the effect of any existing bar ; and want of seisin was, at the common law, a fatal bar. The statute of limitations of Virginia, of 19th December 1792, ch. 77, which, as to this point, is a revisal of the old statute, limits a writ of right upon ancestral seisin, to 60 years, and upon the demand-ant’s own seisin, to 30 years next before the
 
 teste
 
 of the writ. It is, therefore, incumbent on the demandant to prove a seisin within the time of limitation ; otherwise, he is without remedy ; and if so, it must be involved in the issue joined on the mere right. We are, therefore, of opinion, tha.
 
 *157
 
 the act of 1786 did not mean to change the nature of the inquiry as to the titles of the parties, but merely to remedy some of the inconveniences in the modes of proceeding.
 

 If, then, an actual seisin, or seisin in deed, be necessary to be proved, it becomes material to enquire what constitutes such a seisin. It has been supposed, in argument, that an actual entry, under title, and perception of esplees, were necessary to be proved, in order to show an actual seisin. But this is far from being true, even at the common law. There are cases in which there is a constructive seisin in deed, which is sufficient for all the purposes of action in legal intendment. In Hargrave’s note, 3 Co. Litt. 29
 
 a,
 
 it is said, that an entry is not always necessary to give a seisin in deed ; for if the land be in lease for years, curtesy may be, without entry, or even receipt of rent. The same is the doctrine as to seisin in a case of
 
 possessio fratris
 
 So, if a grantee or heir of several parcels of land in the same county enter *“>461 *nto one Parce^ name of the whole, where there is no conflicting possession, the law adjudges him in the actual seisin of the whole. Litt. § 417, 418. In like manner, if a man have a title of entry into lands, but dare not enter for fear of bodily harm, and he approach as near the land as he dare, and claim the land as his own, he hath presently, by such claim, a possession and seisin in the lands, as well as if he had entered in deed. Litt. § 419. And livery within the view of the land will, under circumstances, give the feoffee a seisin in deed as effectually as an actual entry. There' are, therefore, cases in which the law gives the party a constructive seisin in deed. They are founded upon this plain reason, tha either the claim is made sufficiently notorious, by an actual entry into part, of which the vicinage can take notice, or the party has done all that, under the circumstances of the case, he was bound to do.
 
 Lex non cogit seu ad vana aut impossibilia.
 
 The same is the result of conveyances deriving thei.effect under the statute of uses ; for there, without actual entry or livery of seisin, the bargainee has a complete seisin in deed. Com. Dig. Uses, B. 1. I.; Cro. Eliz. 46 ; 1 Cruise Dig. 12 ; Shep. Touch. 223, &c.; Harg. Co. Lilt. 271, note. And the Kentucky act respecting conveyances, which is, in substance, like the statute of uses, gives to private deeds the same legal effect.
 

 It has, however, been supposed, in argument, that not only an actual seisin or complete investiture of the land, but also a perception of the profits, or, as it is technically called, a taking of the esplees, is absolutely necessary to support a writ of right. It cannot, however, be admitted, that the taking of the esplees is a traversable averment in the count. It is but evidence of the seisin; and the seisin in deed once established, either by a
 
 pedis possessio,
 
 or by construction of law, the taking of the esplees is a necessary inference of law. If, therefore, a seisin be established, although the lands be leased for a term of years, and thereby the profits belong to the tenant, still the legal intendment is, that the esplees follow the seisin. And so it would be, although a mere trespasser, without claiming title, should actually take the profits, during the time of the seisin alleged and proved. And, indeed, of certain real property, as a barren rock, a complete seisin may exist, without the existence of esplees.
 

 :!:The result of this reasoning is, that wherever there exists the union of title and seisin in deed, either by actual entry and livery of seisin, or by intendment of law, as by conveyances under the statute of
 
 *158
 
 uses, or in the other instances which have been before stated, there the esplees are knit to the title,- so as to enable the party to maintain a writ of right. And it will be found extremely difficult to maintain, that a deed, which, by the
 
 lex loci,
 
 conveys a perfect title to waste and vacant lands, without further ceremony, will not yet enable the grantee to support that title, by giving him the highest remedy applicable to it, without an actual entry.
 

 Let us now consider how far a perfect title to waste and vacant lands can be considered as having passed by a patent, under the land law of Virginia of 1779, ch. IS. It is argued, that such a patent conveys only a right or title of entry, which, until consummated by actual possession, gives the patentee no actual investiture or seisin of the land : and it is likened to the case of a patent from the crown. Some countenance is lent by authority to this position, so far as respects patents from the crown ; but a careful examination will be found by no means to establish its correctness. No livery of seisin is necessary to perfect a title by letters-patent.
 
 [1]
 
 The grantee, in such case, takes by matter of record; and the law deems the grant of record of equal notoriety with an actual tradition of the land in the view of the vicinage. The contrary is the fact, as to feoffments. The deed is inoperative, without livery of seisin. This difference alone would seem to carry a pretty strong implication that actual seisin passsed by operation of law, on a patent from the crown ; for it is the union of a right and seisin that constitutes a perfect title ; and when once the law has declared a title perfect, it must include everything necessary to produce that effect. Accordingly, we find it expressly held in
 
 Harwich's Case,
 
 5 Co. 94, that letters-patent under the great seal do amount to a livery in law. What is a livery In law, but such an act as, in legal contemplation, amounts to a delivery of seisin? If, for instance, a feoffment include divers parcels of land in the same county, livery of seisin of one parcel, in the name of the whole, is livery of all, not in an adverse seisin. This, therefore, as to all the parcels except that whereof livery is actually made, is but a livery *in law ; r^. and yet to all intents and purposes, it is as effectual as livery in deed. L And it was upon the footing of this doctrine that, in
 
 Harwich's Case,
 
 the court held, that the conveyance of a freehold by letters-patent, to commence
 
 in futuro,
 
 was void, as much as if the conveyance had been by feoffment; because in neither case could there be a present livery of the future freehold estate. The livery must operate at the time when it is made, or not at all. It is not, therefore, admitted by this court, that letters-patent of the crown do not convey a perfect title, where there is no interfering possession.
 

 But even admitting it were otherwise, still, we think, a patent under the land law of Virginia must be considered as a statute grant, which is to have all the legal effects attached to it, which the legislature intended. It cannot be doubted, that the legislature were competent to give their patentees a perfect title and possession, without actual entry. Have they so done? We think, that it is impossible, looking to the language of their acts, or the state of the country, to doubt, that the whole legal estate and seisin of the commonwealth in the lands, passed to the patentee, upon the issuing of his patent, in as full an extent and beneficial a manner (subject only to the
 
 *159
 
 rights of the commonwealth), as the commonwealth itself held them. At the time of the passing of the act-of 1779, Kentucky was a wilderness ; it was the haunt of savages and beasts of prey. Actual entry or possession was impracticable ; and, if practicable, it could answer no beneficial purpose. It could create no notoriety ; it could be evidence to no vicinage of a change of the property. An entry, therefore, would have been a vain and useless and perilous act: and if there ever was a case in which the maxim would apply, that the law does not oblige to vain or impossible things, we think it is such a one as the present. There is no pretence that the legislature have expressly made an entry a pre-requisite to the completion of the title. Such a pre-requisite, if it exist at all, must, arise from mere implication only, and under circumstances which would render it nugatory or absurd. We do not, therefore, feel at liberty to insert in the operation of the grant, a limitation which the law has not of itself interposed.
 

 *And this leads us to say, that even if, at common law, an actual
 
 ¡pedispossessio,
 
 followed up by an actual perception, of the profits, were necessary to maintain a writ of right, which we do not admit, the doctrine would be inapplicable to the waste and vacant lands of our country. The common law itself, in many cases, dispenses with such a rule ; and the reason of the rule itself ceases, when applied to a mere wilderness. The object of the law, in requiring actual seisin, was, to evince notoriety of title to the neighborhood, and then consequent burdens of feudal duties. In the simplicity of ancient times, there were no means of ascertaining titles but by the visible seisin ; and indeed, there was no other mode, between subjects, of passing title, but livery of the land itself, by the symbolical delivery of turf and twig. The moment that a tenant was thus seised, he had a perfect investiture ; and if ousted, could maintain his action in the realty, although he had not been long enough in possession even to touch the esplees. The very object of the rule, therefore, was notoriety, to prevent frauds upon the lord and upon the other tenants. But in a mere uncultivated country, in wild and impenetrable woods, in the sullen and solitary haunts of beasts of prey, what notoriety could an entry, a gathering of a twig or an acorn, convey to civilized man, at the distance of hundreds of miles ? The reason of the rule could not apply to such a state of things ; and
 
 eessante rations, eessat ipsa lex.
 
 We are entirely satisfied, that a conveyance of wild or vacant lands gives a constructive seisin thereof, in deed, to the grantee, and attaches to him all the legal remedies incident to the estate :
 
 d fortiori,
 
 this principle applies to a patent; since, at the common law, it imports a livery in law. Upon any other construction, infinite mischiefs would result. Titles by descent and devise, and purchase, where the party from whom the title was derived was never in actual seisin, would, upon principles of the common law, be utterly lost.
 

 As to the sixth question. We are of opinion, that in Kentuky, a patent is the completion of the legal title of the parties ; and it is the legal title only that can come in controversy in a writ of right. The previous stages of title are merely equitable, which a court of chancery may inforce, but a court of common law will not entertain. In this opinion, we adopt the principles which the *courts of Kentucky have been understood uniformly to sanction. And this opinion is also an answer to the seventh question. *250]
 

 
 *160
 
 As to the eighth question. We are of opinion, that a better subsisting adverse title in a third person, is no defence in a writ of right. That writ brings into controversy only the mere rights of the parties to the suit.
 

 At to the ninth question. We have already expressed our opinion, that tenants claiming different parcels of land by distinct titles cannot be joined in a writ of right. If, however, they omit to plead in abatement and join the
 
 mise,
 
 it is an admission that they are joint-tenants of the whole ; and the verdict, if for the demandant, for any parcel of the land, may be general, that he hath more mere right to hold the same than the tenants ; and if of any parcel, for the tenants, that they have more mere right to hold the same than the demandant.
 

 As to the eleventh point. We are of opinion, that if a man having title to land, enter into a part, in the name of the whole, he is, upon common-law principles, adjudged in seisin of the whole, notwitstanding an adverse seisin thereof. But if the land be in the seisin of several tenants, claiming different parcels thereof in severalty, an entry into the parcel held by one tenant will not give seisin of the parcels held by the other tenants; but there must be an entry into each. Co. Litt. 252
 
 h.
 
 By parity of reason, an entry into a parcel, which is vacant, will not give seisin of a parcel which is in an adverse seisin. But an entry into the last parcel, in the name of the whole, will inure as an entry *into the vacant parcel. It does not appear, in the question put by the court below, into which parcel the entry is supposed to be made.
 

 As to the tenth question. The general rule is, that if a man enter into lands, having title, his seisin is not bounded by his actual occupancy, but is held to be co-extensive with his title. But if a man enter without title, his seisin is confined to his possession by metes and bounds. In the case put by the court below, the first patentee had the better legal title ; and his seisin, presently, by virtue of his patent, gave him the best mere right to the whole land, upon the principles which we have already stated :
 
 d
 
 fortiori, he must have the best mere right to the land not included in the actual close of the second patentee. For, by construction of law, he has the eldest seisin as well as the eldest patent.
 

 Such are the unanimous opinions of this court, which are to be certified to the circuit court of Kentucky.
 

 [1]
 

 United
 
 v.
 
 Schurz, 102 U. S. 878.