## WIGGINS and Others *v.* HOLLEY and Others.*

Action to recover land.   The plaintiff offered in evidence a patent from the *United States*, dated in 1824, to one *K.;* and a deed, upon the back of the patent, from *K.* to *H.*, dated *February* 16, 1827, purporting to have been executed in the presence of witnesses; and, also, an indorsement of a certificate of acknowledgment of the same by *K.*   The deed was not recorded, and it was objected to for the reason that it was not acknowledged or recorded.

* The petition for a rehearing in this case was filed on the 5th of *July*, and overruled on the 13th of *October*.

May Term,
1858.

WIGGINS
v.
HOLLEY.

It had not appeared, by the pleadings, that the defendants were subsequent purchasers. The R. S. of 1824 were in force at the date of the deed. *Held*, that the deed was admissible in evidence; that its force and effect, as evidence, would depend upon the attitude in which the defendants were placed by the whole evidence when heard.

Possession in good faith under a tax-title, although that title be imperfect, may be adverse.

What length of time such adverse possession may have continued, is a question for the jury.

Every man is presumed to be in the legal seizin and possession of land to which he has a perfect title; and such seizin and possession are coëxtensive with his rights, and continue until he is ousted by an actual adverse possession.

An entry by one man upon lands of another, is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if under claim and color of right, it is an ouster—otherwise, it is a mere trespass.

Twenty years' adverse possession is, under the statute, a good defense to an action for possession.

Whether a party's possession extended back beyond the date of his deed; and if so, whether or not he held under such a person or by such claim and color of title, as to render such possession adverse—are questions for the jury.

Where a deed was made in 1827, acknowledged before an unauthorized person, and never recorded; and, in 1826, the land conveyed by it was sold for taxes; but the collector's deed was not made until 1829, and the title conveyed by the latter deed was rendered invalid by a non-compliance with the requirements of the statute,—*held*, that the purchasers, at the tax-sale, could not claim to be subsequent purchasers for a valuable consideration, within the meaning of the R. S. of 1824.

A claimant, under a tax-title, must prove that all the requirements of the statute have been complied with.

The defendants, in this case, asked the Court to instruct the jury as follows: "That, to make a valid tax-title [under the statutes of 1824], it is only necessary to prove, to the satisfaction of the jury, that the land was liable to taxation; that it was regularly assessed; that the duplicate and precept were regularly made out and delivered to the collector; that then the deed of the collector is *prima facie* evidence of the correctness of all the acts and proceedings subsequent to the delivery of such duplicate and precept." The instruction was refused. *Held*, that this was not error; that the levy of a county tax should be proved.

The Court instructed the jury as follows: "If you believe the evidence, you should find for the plaintiffs." *Held*, that this was error.

The testimony of a person who has been a public officer, touching the contents of a lost instrument framed by him whilst in office, drawn from a general recollection of what he considered his official duty, under the law, in framing such instruments, is not sufficient evidence of such contents.

APPEAL from the *Franklin* Circuit Court.

*Tuesday,*
*May* 25.

HANNA, J.—This was an action by *Holley* and the heirs of *Hyde*, against the appellants, for the recovery of a tract

of land. Verdict and judgment for the plaintiffs below. Exceptions were taken, on the trial, to the rulings of the Court upon the reception of evidence; upon the subject of instructions to the jury; and in refusing a new trial.

The plaintiffs, to make out title, offered in evidence a patent from the *United States*, dated in 1824, to *Kellog*, for the land in controversy. They also offered a deed, upon the back of said patent, from *Kellog* to *Hyde* and *Holley*, dated the 16th day of *February*, 1827, which purports to have been executed in the presence of witnesses; and there is, also indorsed, a certificate of acknowledgment of the same, by said *Kellog*, made before a commissioner to take the acknowledgments of deeds, in and for the city and county of *New York*, state of *New York*. This deed was not recorded; and it was objected to for the alleged reason that it was not acknowledged or recorded. It was admitted as evidence. Was the ruling correct?

The R. S. of 1824, pp. 333, 335, upon the subject of the acknowledgment and recording of deeds, was in force at the date of this deed. That provides (§ 8), that all deeds executed within this state shall be acknowledged or proved before the recorder of the proper county, or a judge of the Supreme or Circuit Court, or justice of the peace of the county, and shall be recorded within twelve months; and if not recorded, &c., it shall be adjudged fraudulent and void against any subsequent purchaser or mortgagor for valuable consideration. Section 13 provides, that deeds made by non-residents of the state, and acknowledged before a judge or justice of the county where executed, and certified under the seal of such county, shall be as valid as if made in this state, &c.

The recording of deeds, &c., is a statutory means of giving notice to subsequent purchasers, and others interested, of the conveyance or incumbrance of lands. In the case at bar, it is insisted by one party, and denied by the other, that the defendants were so situated and interested as to be entitled to this notice. The deed may have been void, as against a subsequent purchaser, for a valuable consideration, and without notice. Whether the defendants

were such purchasers, had not, at the time the deed was offered in evidence, been developed, and could not well be until they were permitted to present their defense. The pleadings now, under the statute, in actions to recover land, give no notice of the defense relied on, as a general denial is all that it is necessary to plead. As between the parties to the deed, it was sufficient, and, perhaps, as to all persons, other than those excepted by the statute, to-wit, subsequent purchasers, &c. The deed was, upon the ·proof which was made of its execution, properly admitted; the force and effect of the evidence was an after consideration depending upon the attitude in which defendants were placed by the whole evidence, when heard.

The next question is upon the instructions given, and those asked and refused.

The following were the instructions asked by the defendants, to-wit:

1. "That if the jury believe from the evidence that the defendants, and those under whom they claim, have had possession of the land in dispute for more than twenty years prior to the commencement of this suit, under claim of title, and adversely to all other claims of title, they must find for the defendants."

2. "That the instrument, or conveyance, in evidence in this case, from *Kellog* to *Hyde* and *Holley*, dated the 16th of *February*, 1827, for the land, being neither acknowledged nor recorded, is fraudulent and void in law, as to the defendants herein, and those under whom they claim, and the jury must find for the defendants."

3. "That to make a valid tax-title, it is only necessary to prove to the satisfaction of the jury, that the land was liable to taxation; that it was regularly assessed; that the duplicate and precept were regularly made out and delivered to the collector; that then the deed of the collector is *prima facie* evidence of the correctness of all the acts and proceedings, subsequent to the delivery of such duplicate and precept."

The Court refused to give either of these instructions,

May Term,
1858.

WIGGINS
v.
HOLLEY.

but charged the jury as follows: "If you believe the evidence you should find for the plaintiffs."

In considering the instructions, it is, perhaps, proper to advert to the leading facts of the case—the evidence all being in the record.

In addition to the patent and deed already referred to, the plaintiffs proved by one *Truman Smith* that he was a witness to the deed, and, although he did not recollect of seeing *Kellog* sign it, yet he had no doubt that he was present at the signing, or heard *Kellog* acknowledge the same at the time he placed his name to the deed as a witness.

The grantees were partners in business in the city of *New York*. Evidence was given of the death of *Hyde*, one of the grantees, and of the names of the heirs whom he left.

The defendants offered evidence tending to show the assessment of the land in the years 1825 and 1826 for taxation; of the amount of taxes levied; and of the advertisement and sale of the land in *November*, 1826, for the non-payment of the taxes of those two years; and then gave in evidence the collector's deed dated the first day of *April*, 1829, to *Morris*, the assignee of the purchaser at such sale, and traced their title through him. It was admitted that the land was subject to taxation at the times those taxes were levied. There was no controversy about the fact that the land was at that time, and until the year 1834, wild and uncultivated. There was evidence tending to show that during the year 1834 large quantities of stone were removed from the land, and large quantities of wood in 1835, by direction of one *Shoup*, who afterwards obtained a deed from *Morris*. By what authority he had possession, so as to authorize the removal of the stone and wood, does not appear. *Shoup* obtained the deed in *December*, 1836. Actual possession is shown from that time to the commencement of the suit, under that claim of title. There was no evidence that *Morris* was ever in actual possession, or even upon the land. There was evidence tending to show that, as late as the spring of 1836, *Ryman* was agent for *Morris* in regard to the land, and that *Shoup* applied

to *Ryman* to buy the land, and did not, at that time, claim title to it.

It has been decided by this Court that possession, in good faith, under a tax-title, although that title might not be perfect, may be an adverse possession. 4 Ind. R. 167. See, also, 13 How. U. S. 477; 19 Curtis, 602. But for what length of time such adverse possession had continued, was a question for the jury. *Id.* 168.

"The law deems every man to be in the legal seizin and possession of land to which he has a perfect and complete title; this seizin and possession is coëxtensive with his right, and continues until he is ousted by an actual adverse possession." 8 Cranch, 229, 230.—4 Wheat. 213, 233.—4 Peters, 480, 504, 506.—5 *id.* 354, 345.—6 *id.* 743. "An entry by one man upon the lands of another, is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if made under claim and color of right, it is an ouster, otherwise, it is a mere trespass." 11 Peters, 52.—12 Curtis, 332.

Under our statute, twenty years' adverse possession of lands would be a good defense to an action for the recovery of possession. 2 R. S. p. 76.

The record, in this case, does not show at what time the summons therein was issued. The complaint was filed on the 3d of *February*, 1855, and on the 9th of *August* of that year, the parties appeared in Court. So that, whether a summons issued, or not, the suit was, upon their appearance of record, commenced.

The deed from *Morris* to *Shoup* was dated *December* 15th, 1836, and, for aught that appears, was executed at that time, and from thence until the commencement of this suit possession under it was held by the grantee and those claiming under him. Such possession appears to have been in good faith; for the tax-collector's deed of *Morris* was made under the law of 1824, p. 344, which provides that "such conveyance shall be conclusive evidence that the sale was regular, according to the provisions of this act."

Did the possession of *Shoup* extend back beyond the

date of his deed; and if so, whether or not he held that possession in any manner under or through *Morris*, or by such claim and color of title as made such possession adversary, were questions of fact for the jury.

The first instruction asked ought to have been given.

As to the second instruction, it is conceded that the acknowledgment of the deed from *Kellog* was made before an unauthorized person. That being the fact, and the deed not having been recorded, it is insisted that those who derived title through the sale for taxes are subsequent purchasers for a valuable consideration, and as such, entitled to the benefit and protection of the statute regulating the recording of deeds, already referred to.

Although the collector's deed bears date in 1829, and that of *Kellog* to *Hyde* and *Holley* in 1827, yet, in fact, the evidence shows the sale for taxes to have been made in 1826—so that, really, this unrecorded deed was made after the sale for taxes.

If the law had been strictly pursued in the assessment, &c., for taxes, so as to make a valid tax-title, then the question would be fairly presented, which is now attempted to be raised; but, as will be seen, the proceedings were so irregular and informal, as developed by the evidence, that the title attempted to be set up is invalid. And, therefore, the defendants cannot, in our opinion, claim to be subsequent purchasers for a valuable consideration, within the meaning of this statute, whatever their rights might have been under other circumstances, such as those above indicated. For this reason, without noticing any other, the instruction was properly refused.

As to the third instruction asked, it professes to state to the jury the material points necessary to be made out in establishing a tax-title. In *Williams* v. *The State*, this Court held the following language: "The claimant, under such title, must prove that all the requisites of the law have been complied with." 6 Blackf. 36. Which is recognized in 4 Ind. R. 132. This appears, also, to be the rule of decision in *Ohio*, under somewhat similar statutes. 2 Ohio R. 233.—3 *id*. 232. Those statutes differed from ours in

this, that they did not make the deed of the collector evi-
dence to the same extent.

Is the instruction explicit enough?

To determine this, we must look to the requisites of the law. This will be found in the R. S. of 1824, p. 338— "An act for assessing and collecting revenue"—and an amendment thereof in the Acts of 1825, p. 63. The provisions of these statutes, so far as they have a bearing upon the questions involved in this case, are, that the board of commissioners of the county should appoint one or more assessors for the county, or one for each township, at their *February* term each year. R. S. 1824, p. 340, § 5. By an act one day later, in the same code, p. 87, § 7, the commissioners were authorized to appoint a suitable number of listers at their *January* session. This latter act was in force, and therefore the objection that the appointment was wrongfully made in *January*, is not well taken. The assessor or assessors, on the first *Monday* of *May*, were to be at the clerk's office, and there publicly compare the assessment rolls, &c., and make such corrections and amendments, &c., as were found necessary, and then deposit the corrected roll or rolls with the clerk to be by him filed and made matter of record. R. S. 1824, p. 341, § 7.—*Id.* p. 88, § 8. It was made the duty of the board of justices, at their *May* session, to receive and inspect the lister's books. By the amendatory act of 1825, p. 66, § 4, after the clerk and lister had compared the roll, the same was to be laid before the board of justices, and if found correct, it was by them accepted by a writing on the back thereof signed by the president of said board. At the time of appointing assessors, the county board were to determine the rates of taxation of several kinds of property, for county purposes. *Id.* § 10. They were then, at the *May* session, to levy a county tax, and cause their clerk to make out a duplicate (R. S. 1824, p. 88, § 8) and precept in the name of the state, and deliver the same to the collector.

If it is true, as assumed in the instruction, that it devolves upon the claimant, under a tax-title, to show that all the requisites of the law, in regard to the assessment, &c.,

anterior to the delivery of the duplicate to the collector, had been complied with, then there is a total failure in this instruction to direct the attention of the jury to one very material duty to be performed by the county board, before this duplicate, in the form it was, could have been made out by the clerk; and that was the levy of a county tax. That tax, on lands, could not exceed one-half the amount assessed for state purposes. Lands were then assessed in three grades, first, second, and third rate, and were respectively charged one dollar and a half, one dollar, and seventy-five cents per hundred acres, for state purposes. The clerk had no power to make a duplicate without such levy having been first made, at least, in the form in which it is alleged to have been made in this instance.

The third instruction was therefore properly refused.

The instruction given—to-wit: "If you believe the evidence, you should find for the plaintiffs," remains to be considered.

In the case of *Ewing* v. *Burnet*, 11 Peters, 41, the testimony was conflicting as to adverse possession, and some other matters in the case, "whereupon the plaintiff's counsel moved the Court to instruct the jury that on this evidence the plaintiff was entitled to a verdict. Before the Court could have granted the motion, they must have been satisfied that there was nothing in evidence, or any fact which the jury could lawfully infer therefrom, which would in any way prevent the plaintiff's recovery. If there was any evidence which conduced to prove any fact that could produce such effect, the Court must assume such fact to have been proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree to prove the facts relied on." 12 Curtis, 330. See 7 Ind. R. 477.

The instruction was erroneous.

Although the rulings of the Court upon instructions were thus wrong, it is insisted in argument that the verdict is right upon the evidence.

There was no direct testimony in reference to the accept-

ance, as required by law, of the assessment roll of 1826.
There was no indorsement, either upon the back or face of
that roll, by the president of the board of justices, of its
acceptance by them—the only indorsement being as fol-
lows: "*Benjamin Mc Carty*, the lister in and for the county
of *Franklin*, and state of *Indiana*, completed his computa-
tions of the taxes for the year 1826, this day, and filed the
duplicate with the clerk, pursuant to the order of the board
of justices, at their *May* board, 1826, and therefore submit-
ted it to the clerk's inspection. *May* 11th, 1826. *Benj.
Mc Carty*, jr., lister."

The order of the board referred to in this indorsement is
not in evidence. Whether they, by that order, either di-
rectly approved or disapproved of the correctness of the
roll, does not appear. But it is by that indorsement shown
that the *May* meeting of the board was past. That cer-
tainly, to some extent, the subject of that assessment had
been under consideration, and, for some purpose, was re-
ferred to an officer of that board. These circumstances,
in connection with the absence of an indorsement of ap-
proval, would raise the presumption, if any inference at all
is to be drawn, that the board, for some reason, had refused
to indorse their approval. No precept for either of the
years 1825 or 1826, nor duplicate for 1826, were produced
upon the trial. They could not be found, and the proof
was, perhaps, sufficient to admit secondary evidence of
their contents. That evidence consisted of the verbal tes-
timony of *Enoch Mc Carty*, who was clerk of the Court in
1825 and 1826, and *Robert John*, who was the collector of
the revenue. It is insisted that this evidence is not suffi-
cient. We have carefully considered it, and have come to
the conclusion that the objection to its sufficiency is well
taken. Neither of the witnesses were able to give the con-
tents of the lost instruments. It is apparent from their whole
testimony—aside from the fact that they stated they could
not remember the contents—that they testified from a gen-
eral recollection of what their official duty required of them
under the law, and of what that law, as understood by

them, made it necessary to embody in such instruments of writing, rather than of the contents in fact.

For these failures of legal proof upon the part of the defendants on the trial below, the verdict would be sustained, so far as the question of the invalidity of the tax-title is concerned; but the judgment must be reversed for the refusal to instruct upon the question of adverse possession, which was, so far as we can see from the record, a refusal to submit that question, in proper form, to the jury.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*J. Yaryan* and *G. Holland,* for the appellants.

*J. D. Howland,* for the appellees (1).

(1) In his petition for a rehearing Mr. *Howland* argued as follows:

The elaborate opinion of the Court disposes of every point in the record, and settles them all in favor of my clients, with a single exception.

That exception is this: the Court declined to charge the jury that twenty years' adverse possession makes a perfect title to real estate. Instead of this charge or any other, whether from the plaintiffs or defendants, the Court directed the jury, if they believed the evidence, they must find for the plaintiff.

Here, the opinion of the learned judge finds fault with the instructions of the Court below; and it is decided that inasmuch as there was some evidence adduced upon the trial, tending to show an adverse possession, it was the duty of the Court to give the special charge asked for on that point; and that the refusal to give it, and the giving of the general charge in the terms above stated, was, in effect, a withdrawal of that part of the case from the jury.

The decision is, then, that a charge has been improperly given, and another improperly withheld. What results when the judicial mind reaches this point in a cause, when the record embodies the evidence? Virtually, then, this Court *tries the case upon the evidence in the record.* If that evidence preponderates for the party, in whose favor the judgment was given, no matter how bad the charges given, nor how good the charges refused, the judgment will be affirmed. I cannot state this proposition more strongly than it has been oftentimes stated by this Court.

In *Amick* v. *O'Hara,* 6 Blackf. 258, on the hypothesis that the instruction given was not law, it is said—"We have the evidence before us, and as it fully sustains the verdict, the objection to the instruction is not material."

In *Hooker* v. *The State,* 7 Blackf. 272, it is remarked that the "instructions need not be examined, as the record contains the evidence, and shows clearly that the issues of fact were rightly decided."

In *Casteel* v. *Casteel,* 8 Blackf. 240, the Court say—"We have frequently decided that the misdirection of the Court, if the verdict be right, is not a good cause for reversing a judgment."

In *Ellison* v. *Dove, id.* 571, the point is well stated in the syllabus: "An

erroneous instruction to the jury cannot be assigned for error, if it be clear that the jury were not misled by the instruction."

In *Conwell* v. *Emrie*, 4 Ind. R. 209, the language is as follows: "We think the instruction was erroneous; but still we do not consider that error sufficient cause for reversing this judgment. The record professes to contain all the evidence given on the trial. We are satisfied it was not sufficient to have supported a verdict in favor of the plaintiff."

In *Rogers* v. *Maxwell*, *id.* 243, it is said that "the erroneous instruction, disregarded as it was by the jury, cannot affect the verdict, which is fully sustained by the evidence."

In *Muirhead* v. *Snyder*, *id.* 486, "something is said about the instructions which also appear in the record. But as the verdict and judgment are supported fully by the evidence, *it is wholly immaterial what instructions* the associate judges, who tried the case, gave to the jury."

See *Clifton* v. *Shannon*, *id.* 498.

In *Watson* v. *Allen*, *id.* 537, it is said that, "the verdict being substantially right on the evidence, the instructions given or refused are immaterial."

In *McCall* v. *Seevers*, 5 Ind. R. 187, in the syllabus we find—"If the verdict is fully sustained by the evidence, the Supreme Court will not set it aside on account of an erroneous instruction given to the jury."

In *Short* v. *Scott*, 6 Ind. R. 430, the Court say—"From this evidence we are satisfied with the verdict. Hence, the verdict being right on the weight of the evidence, the law of the case, as given by the Court to the jury, is wholly immaterial."

See *Morford* v. *Woodworth*, 7 Ind. R. 83.

In *Vanuxen* v. *Rose*, *id.* 222—"The instruction, though erroneous, did not mislead the jury. The record professes to set forth all the evidence. * * * * * * * The verdict, *it seems to us*, is right on the evidence. An incorrect charge will not, therefore, be allowed to reverse the judgment."

In *Pursley* v. *Morrison*, *id.* 356, it is well put in the syllabus—"A judgment will not be reversed because the Court gave an erroneous instruction, if the instruction was harmless."

In *Roberts* v *Nodwift*, 8 Ind. R. 339, it is said that—"The instructions to the jury are complained of; but this Court has often decided that a verdict *in accordance with the weight of evidence, and with justice*, will not be disturbed on account of erroneous instructions to the jury."

The course of decision is uniform, down to the present term (*May*, 1858)—where the point is ruled as above in the unreported case of *Daubenspeck* v. *Arnel*.