### BELL v. PEABODY & a.

A deed duly acknowledged and recorded is not of itself evidence of seizin in either the grantor or grantee; and it makes no difference in this respect that the land described in the deed is a wild, unbroken forest.

TROVER, for a quantity of spruce timber cut and hauled by the defendants from lot 9, range 6, in Randolph, in the winter of 1880–'81. Facts found by a referee. Both parties claimed title to the lot. The plaintiff introduced a deed of warranty from Alfred Lister to himself, dated November 1, 1875, duly acknowledged and recorded. This deed describes the lot in question and four other lots of about equal value, for all of which the plaintiff paid Lister from $6,000 to $8,000 in other property. The plaintiff also introduced twelve other deeds in the line of Lister's title, all duly acknowledged and recorded, several being deeds of warranty, extending back to 1840, and ending there with a deed from Robert I. Leighton, collector of taxes of Randolph for 1839, to Hiram Baxter, dated December 25, 1840. He also gave evidence of the proceedings of the town-meeting, and the assessment of the county and town tax for 1839; but no evidence of a sale of the lot for the tax of that year was shown. Neither the plaintiff nor any of his grantors ever entered upon the lot; but Lister, the plaintiff's immediate grantor, in 1873, went to the house of one Ithiel Scates, who was his agent in Randolph for paying the taxes, for the purpose of looking after these lands. Scates pointed out to him the lot in question, on the side of Randolph mountain, a part of it being in sight; but he did not enter on the lot, or go within two hundred or three hundred rods of it.

The lot was a wild, unbroken forest, never having been improved or used for any purpose before the entry and cutting upon it by the defendants in the winter of 1880–'81.

The defendants put in evidence a deed from Ithiel Scates, collector of Randolph for 1876, to J. W. Parker, dated February 9, 1878, duly acknowledged and recorded; also a deed from Parker to Wheeler & Paine, and a written permit or license to cut timber on the lot from Wheeler & Paine to the defendants, dated December 1, 1880. They also showed a sale of the lot for the tax of 1876 by Scates, collector, to Parker; but it appeared that the warrant for the town-meeting at which the tax of that year was voted was posted in but one place,—and the referee for that reason held the sale to be void.

In October, 1880, after Wheeler & Paine received their deed, they entered upon the lot, surveyed it, marking lines and corners, and soon after gave the defendants the permit under which the timber sued for was taken. The question whether the action can be maintained was reserved for the opinion of the whole court.

*Ladd & Fletcher*, for the plaintiff.    November 1, 1875, the plaintiff bought the lot of land in controversy in this suit, with four others like it in Randolph, paying for the whole from $6,000 to $8,000.   As evidence that he had bought and paid for this property, he took a deed of warranty properly describing it, which he caused to be recorded in the place provided by law for the preservation of evidence of the ownership of lands, May 16, 1876.

For thirty-five years before, the same property had passed from hand to hand as a subject of bargain and sale many times, the purchaser each time paying a price agreed upon (generally much more than its value), and the seller giving a deed, generally containing covenants of warranty as a solemn evidence that the ownership of the thing had passed from seller to buyer.

These buyers and sellers all lived outside the state, and a very considerable distance from the land.    The land was all the time a wild, unbroken forest, but the successive owners paid the taxes from year to year, one of them, Lister, the plaintiff's immediate grantor, having an agent here for that purpose.   In 1873, Lister went to Randolph to look after the land, saw his agent, Scates, saw the land, exercised just as much dominion over it by casting his eyes upon it as he would have done by setting his foot upon it, and left just as much of a mark,—just as much evidence that he was lord of the soil by one act as he would have done by the other.

Unfortunately, neither he nor any of his grantors for thirty years, nor this plaintiff, had knowledge of that precious relic of feudalism which the defendants seek to make the hinge upon which this case must turn, and so none of them ever went and put their feet upon the land, or plucked a twig from a tree growing thereon, or made ceremonious declaration to the wilderness, of their claim and dominion over it.

Five years after the plaintiff had thus become the owner of this land, the defendants, without the slightest shadow or pretence of title or right,—strangers, intruders, trespassers (for the tax title is found to be void, and is conceded to be good for nothing),—entered upon it and cut and carried away the timber; and now the best their able and learned' counsel can say for them is, that, inasmuch as they were living close by the plaintiff's property while he lived in New Jersey, they were able to get possession and did get possession of it before he could or did—therefore it is theirs and not his; and the application of the feudal rule they invoke would lead to that amazing result.   The truth is, the rule has long outlived the only reason that ever constituted an apology for its existence, and so has long outlived its necessity and usefulness.

But we contend that it was long ago abrogated by the legislature in this state.   By our statute, the execution, acknowledgment, and recording of a deed are expressly made to take the place of livery of seizin.   " Real estate may be conveyed by deed, executed by any person or his attorney, acknowledged and recorded as directed in

this chapter, without any other act or ceremony whatever." Gen. St., c. 121, s. 1.

Under a statute identical in effect with this, the Massachusetts court has always held that such a deed invests the grantee with seizin, the intent of the statute being "to provide a substitute for a feoffment with livery of seizin. The livery of seizin is made to give notoriety to the alienation. This purpose is better effected by the registry." *Parsons*, C. J., in *Wells* v. *Prince*, 4 Mass. 68. That this view has always been adhered to in Massachusetts is shown by the following, among other cases: *Ward* v. *Fuller*, 15 Pick. 185; *Burridge* v. *Fogg*, 8 Cush. 183; *Mara* v. *Pierce*, 9 Gray 306; *Green* v. *Chelsea*, 24 Pick. 78; *Whitman* v. *Railroad*, 3 Allen 139; *Gloucester* v. *Gaffney*, 8 Allen 13; *Farwell* v. *Rogers*, 99 Mass. 33; *Floyd* v. *Tewksbury*, 129 Mass. 364;—to the same effect, see *Caldwell* v. *Fulton*, 31 Penn. St. 483; *Wyman* v. *Brown*, 50 Me. 160; *Bryan* v. *Bradley*, 16 Conn. 481; *Williamson* v. *Carlton*, 51 Me. 449. "In the absence of other evidence, a deed of land duly acknowledged and recorded raises the presumption that the grantor has sufficient seizin to enable him to convey, and also vests the legal seizin in the grantee." *Ward* v. *Fuller, supra*. Mr. Washburn says,—"It will be found that in many of the states the execution and recording of a deed is made to perform the office of livery of seizin at common law." 3 Wash R. P. 587.

As an illustration of this point, entitled to much consideration, we refer to the statute respecting mortgages of personal property. Without the statute, an actual transfer of possession would be necessary to make a good pledge or hypothecation of the property. For the notoriety which would thus be given to the transaction, the statute substitutes the recording of the instrument in the town-clerk's office. Is it not as clear that the statute cited above, dispensing with "other ceremony" in the case of real estate, substitutes recording, etc., for livery of seizin, as that the statute respecting personal mortgages substitutes recording for possession in that case?

But even if it were held that the rule still has foothold in this state, it is not to be applied here, because the case falls within a well recognized and established exception to it by reason of the fact that this lot was a "wild, unbroken forest." As the following remarks of Judge *Story*, in *Green* v. *Liter*, 8 Cranch 229, cover the whole ground of our contention on this point, and seem to be perfectly applicable to the case, we quote them:

"The common law itself in many cases dispenses with such a rule, and the reason of the rule itself ceases when applied to a mere wilderness. The object of the law, in requiring actual seizin, was to evince notoriety of title to the neighborhood, and the consequent burthens of feudal duties. In the simplicity of ancient times there was no means of ascertaining titles but by the visible seizin, and, indeed, there was no other mode between subjects of

passing title but livery of the land itself by the symbolical delivery of turf and twig. The moment that a tenant was thus seized, he had a perfect investiture, and, if ousted, could maintain his action in the realty, although he had not been long enough in possession even to touch the esplees. The very object of the rule, therefore, was notoriety, to prevent frauds upon the lord and upon the other tenants. But in a mere uncultivated country, in wild and impenetrable woods, in the sullen and solitary haunts of beasts of prey, what notoriety could an entry, a gathering of a twig or acorn, convey to civilized man at the distance of hundreds of miles? The reason of the rule could not apply to such a state of things, and *cessante ratione, cessat ipsa lex.*"

We contend that so far as regards any aspect of the question as it is presented by the present case, the above remarks have perfect application here, and the two cases are not to be distinguished. Seizin is seizin, whatever that may be. What is seizin in one case and for one purpose, is seizin in another case and for another purpose. What is to be accepted for seizin in one case and for one purpose, is to be accepted for seizin in another case and for another purpose. If there need be no entry upon wild and uncultivated land, under a deed which really passes the ownership, to give the grantee legal seizin, where such entry is required to make full title, there need be no entry to make seizin that shall be good against strangers when the grantor is not the owner,—for, seizin is seizin, and nothing more, whatever may be the other facts with respect to title; and so the fact which will excuse an actual entry in one case will excuse it in the other.

But in any event the tax deed from Leighton to Hiram Baxter, Dec. 15, 1840, gave seizin to the grantee, which has come to the plaintiff by the mesne conveyances in his chain of title. "A grant of land by the government is equivalent to a conveyance with livery of seizin." *Enfield* v. *Day*, 11 N. H. 520. "A grant of land by an act of the legislature vests an actual seizin in the grantee. The grant in such a case is a public act, much better calculated to give notoriety to the conveyance than an actual entry upon the land by an agent of the state, or by the grantee. And this notoriety of the grant is, in contemplation of law, equivalent to an actual entry by the grantee." *Richardson*, C. J., in *Enfield* v. *Permit*, 8 N. H. 515 (note that notoriety of the grant is the thing all the time had in mind): "A grant by a government competent to make it carries with it seizin." *Bellows* v. *Copp*, 20 N. H. 501.

A collector of taxes is as much a public officer, as an agent appointed by act or joint resolution of the legislature, or by the governor and council under legislative authority, to convey land. The authority of such collector to make a good and valid conveyance of the land of a delinquent tax-payer is made as full and explicit by the statute as is the authority of any other public officer or agent to do the same thing on behalf of the state, however appointed. The

conveyance is as much a conveyance by the state in the one case as. in the other. The form of the deed is dictated in exact terms by the public law of the state. Laws of 1830, *p.* 567. In a political point of view, towns are nothing less than subdivisions of the state, entrusted and charged with many important governmental functions. The assessment and collection of a tax is an exercise of one of the highest attributes of sovereignty by the state. It makes no difference that in the exercise of this function the state makes use of the convenient instrumentality furnished by town organizations. It is still in substance and to all legal intents the act of the state, and the deed of the collector must have in substance and to all legal intents the same effect as any other grant or conveyance from the state. It is no answer, and it is not true, to say that if such a deed gives seizin, the defendants stand better than the plaintiff, because they have a later invalid tax deed. It is elementary, that when each of two claimants to the same piece of land stand upon their seizin and nothing more, the one who is earlier in point of time stands the stronger. This being so, Hiram Baxter had legal seizin of the land when he conveyed to Hodgman, February 14, 1843; and that seizin has been transmitted, through the chain of deeds shown by the case, to the plaintiff, all the time making a right that has been good against a stranger, even though it may not have been good against the real owner.

It is to be borne in mind that this is not a suit to recover possession of the land, so that all the nice learning in the books, from the earliest times to the present, as to the necessity of an actual entry by the owner before bringing a writ of entry or other proceeding to regain the possession, may be laid aside. Lord Coke quaintly says,—" Till a man have seizin, all is labor *et dolor et vexatio spiritus;* but when he hath seizin, he may *sedere et acquiescere.* In all suits to recover seizin or possession, he who prosecutes them ought to labor, but when he hath obtained seizin he may *sedere et accumbere* in peace and tranquillity." 6 Rep. 58. This has reference to real actions, and a technical rule resting upon reasons which disappeared with feudal tenures and the introduction of deeds of bargain and sale, with provisions for registration.

Manifest absurdity and injustice resulting from the application of a supposed rule of the common law always raise doubt as to whether the rule has been rightly understood and properly applied. It is so absurd as to be really abhorrent to common-sense to hold that if Mr. Lister, when he came to look after the land in 1873, had stepped his foot upon it, his deed to the plaintiff would have made a good title,—but, inasmuch as he only went in sight of it, his deed is good for nothing, and the plaintiff is compelled by the law to stand by and see the land he has bought and paid for stripped of its timber by one who has not a shadow of right; while for remedy he is turned over to an action upon the covenants of his deed, whereby he may compel another innocent and unoffending citizen

to make up some part of the loss he has sustained, and the plunderer is bidden to go away in peace and enjoy in his own way the fruits of his wrong-doing.

The injustice of giving to one man, without consideration or right, property which another has bought and paid $6,000 to $8,000 for, does not require any comment.

*W. & H. Heywood*, for the defendants. For the purposes of this case, it is to be taken that the tax sales were all void. The plaintiff's title has no origin. It is nothing but a series of deeds not accompanied by an entry on the land. But the defendants claim title to the timber by virtue of deeds that give color of title and under which an entry was made, and thereby Wheeler & Paine had seizin of the lot. To sustain an action for the land " the demandant must allege some seizin of the lands in himself, or else in some person under whom he claims and derives the right from the person so seized to himself." 2 Bl. Com. 196. We insist that this is the law of New Hampshire, and that a series of deeds without an entry makes no title. And the one who has a deed sufficient to make a color of title, and who has the prior seizin by entry, has the better title. In the case *Willard* v. *Twitchell*, 1 N. H. 177, 178, the court say,—" In this case Twitchell had neither an actual nor a constructive seizin of the land at the time of the conveyance, and of course nothing passed by the deed." What the court meant by " constructive seizin " was a good and valid title, in which case there is constructive seizin though there has been no actual entry. But actual seizin means a taking of possession. Coke Lit. 153 a. He who has a lawful title to land is legally in possession, and in law is seized of it. But no such consequence follows from the fact that one has a mere paper title that has no valid commencement and no aid from an actual entry. *Towle* v. *Ayer*, 8 N. H. 57.

In *Woods* v. *Banks*, 14 N. H. 101, 111, the court said, in substance, where Slyfield and Wells, the plaintiff's grantors, had no title and no possession, " they had nothing in the land, and nothing passed by their deeds." But it appeared that the plaintiff took possession of the lot by surveying and marking the boundaries; and the court said that "the plaintiff's possession is *prima facie* evidence of title." *Parker* v. *Brown*, 15 N. H. 177, 185 ; *Bedel* v. *Loomis*, 11 N. H. 9 ; *Bailey* v. *Carleton*, 12 N. H. 9 ; *Rand* v. *Dodge*, 17 N. H. 343, 354 ; *Spence* v. *Smith*, 18 N. H. 587 ; *Partridge* v. *Hatch*, 19 N. H. 494 ; *Hutchins* v. *Carleton*, 19 N. H. 487 ; *Hoag* v. *Wallace*, 28 N. H. 547 ; *Warren* v. *Cochran*, 30 N. H. 379 ; *Jones* v. *Lumber Co.*, 31 N. H. 381 ; *Poor* v. *Gibson*, 32 N. H. 415 ; *Little* v. *Downing*, 37 N. H. 355 ; *Graves* v. *Amoskeag Co.*, 44 N. H. 462 ; *Wells* v. *Iron Co.*, 48 N. H. 491 ; *Tilton* v. *Stanyan*, 57 N. H. 489. This last case seems to be conclusive in favor of the defendants.

CARPENTER, J. The action is trover for spruce timber cut from lot 9 in Randolph. The question is upon the property in the

timber; and this depends upon the title to the lot. The plaintiff traces his title through a chain of recorded deeds commencing in 1840; but neither he, nor any one under whom he claims, ever entered upon the lot. He also claims under the deed of the collector of taxes for 1865. The warrant calling the meeting at which the taxes for that year were raised was posted at one place only. The defendants claim under a license from Wheeler & Paine, who claim title to the lot under a deed of the collector of taxes for 1876, and who entered upon the lot, surveyed it, and marked the lines and corners in 1880. They afterwards gave the defendants the permit under which they cut the timber. The warrant calling the meeting at which the taxes for 1876 were raised was posted only at one place. The result which we have reached renders it unnecessary to determine whether the sales for taxes were valid. The same objection exists to both. If the tax sale for 1865 under which the plaintiff claims, and that for 1876 under which the defendants claim, are valid, the defendants' title is the best because it is founded upon the latest sale. If both are invalid, neither party makes a title by deed, and he who shows the earliest possession must prevail.

The defendants entered upon and took possession of the lot in 1880. The plaintiff adduces no evidence of possession at any time, either in himself or in any one under whom he claims, unless, as he contends, the deeds introduced by him are such evidence.

In this state, one who has a good title to land in the adverse possession of another may convey it by deed: his right of entry will pass by it. A writ of entry may be maintained in all cases where the demandant has a right of entry: possession is presumed to attend the title. *Willard* v. *Twitchell*, 1 N. H. 178; *Hadduck* v. *Wilmarth*, 5 N. H. 188; *Whittemore* v. *Bean*, 6 N. H. 50; *Concord* v. *McIntire*, 6 N. H. 527; *Warren* v. *Cochran*, 30 N. H. 379; *Dexter* v. *Sullivan*, 34 N. H. 480. By the English common law, a deed of lands held at the time adversely by another is void. A demandant, in a writ of entry or writ of right, must, in order to maintain his writ, show an actual seizin although his title may be perfect. Seizin must be proved as an independent fact: there is no presumption that it attends the title. To this rule there are exceptions,— as, for example, if one having a right of entry is prevented from actually entering by violence or intimidation. Coke Lit., *s.* 419. In this country it is generally held that wild forest lands are excepted from the operation of this rule. As to them, the doctrine prevails which in this state is applied in all cases. To entitle a demandant in a writ of entry or of right to recover such lands, it is sufficient to show a legal title to them: the seizin is presumed to attend the title. *Jackson* v. *Sellick*, 8 Johns. 262, 270; *Bradstreet* v. *Clarke*, 12 Wend. 602; *Green* v. *Liter*, 8 Cranch 229; *Ward* v. *Fuller*, 15 Pick. 185; *Green* v. *Chelsea*, 24 Pick. 71. But it is essential that title be shown; otherwise there is no foundation for

the presumption. *Green* v. *Liter* was a writ of right to recover wild
and unoccupied lands. The fifth question submitted was, "Can
a demandant, who has obtained a patent for the land in contest.
from the state of Virginia, maintain a writ of right against a person
claiming and holding possession under a younger patent from the
same state, without having first taken actual possession of the land?"
It was held that he could, upon two grounds,—first, that a grant by
the sovereign conveys an actual seizin without entry; and second,
that a grant by the owner of wild lands has the same effect. In
reading the opinion of the court, it is to be borne in mind that the
demandant had, as against the tenant, a perfect title. There is no
intimation that a deed is, in the absence of title shown in the
grantor, evidence of seizin in the grantee; and the case is not rele-
vant upon the question.

*Ward* v. *Fuller*, *supra*, was a writ of right. The demandants.
claimed as heirs-at-law of Jane Pigeon, who took the estate by
devise under the will of Edward Dumaresque, executed in 1763 and
proved in 1767. To prove the seizin of Dumaresque, deeds of the
land from Allen to Barrett in 1729, and from Barrett to Dumaresque
in 1736, a deed of division between the heirs of Allen in regard to
other lots in the same tract in 1747, and several deeds made by
Dumaresque and reconveyances to him of the same lot, were re-
ceived in evidence, and there was no other evidence of either seizin
or title. The jury were instructed that a deed, duly executed,
acknowledged, and registered, gives a seizin *de facto* to the grantee
and a *prima facie* title. This instruction was held correct. The
court said,—"The seizin of the grantor is undoubtedly necessary
to give effect to his conveyance, and without this it would be inop-
erative. But how may this seizin be proved?—and is the deed
itself any evidence of it? Must every one relying upon a deed in
support of his title be compelled to show the seizin of the grantor
before he can be allowed to give the deed in evidence? We think
not. It would in many cases be impracticable, and thus exclude
the highest and most certain evidence of title. We have already
seen that a deed of conveyance, acknowledged and recorded, is.
equivalent to feoffment with livery of seizin; and as this could be
perfected only upon the estate conveyed, the deed itself may be
considered as presumptive evidence that the grantor had such
seizin as would render operative the act done by him. The legal
presumption is, that seizin follows the title, and that they corre-
spond with each other. Surely he who can trace his title through
a chain of recorded conveyances, although without proof of entry
or occupation by any one, should have a preference over him who
has neither title nor possession. But it is only *prima facie* evi-
dence, and is liable to be rebutted and disproved. And the rule
which we here intend to establish is, that in the absence of other
evidence the deed itself raises a presumption that the grantor had.
sufficient seizin to enable him to convey, and also operates to vest.

the legal seizin in the grantee." This doctrine is followed in *Williston* v. *Morse*, 10 Met. 25, *Burridge* v. *Fogg*, 8 Cush. 183, *Mara* v. *Pierce*, 9 Gray 306, *Whitman* v. *Railroad*, 3 Allen 139, and *Farwell* v. *Rogers*, 99 Mass. 33, and seems firmly established in Massachusetts.

*Mara* v. *Pierce*, above cited, was a writ of entry tried upon the general issue. The demandant put in evidence the duly recorded deed of one Hathaway, conveying to him a part of the demanded premises, and produced no other evidence. The tenant introduced no evidence. It was held that the demandant was entitled to recover. The court said,—"Under the plea of nul disseizin and nothing more, it would certainly be incumbent on the demandant to show a title to the premises in himself, and a failure so to do would be a failure to support his action. * * * The demandant introduced a deed from Hathaway of this lot to him. This was enough if the defendant had not a title older than the date of that deed. Previous occupation under a claim of title would have been sufficient to show an older and better title in the tenant, and require the demandant to connect himself with some earlier title." It was admitted by the pleadings that the tenant was, at the date of the writ, in possession claiming the freehold. If he had proved that he had been in possession, claiming title for any period less than twenty years, but not prior to the date of Hathaway's deed, the result would have been the same. Hence, in that state a demandant, who can merely show a deed of the premises executed and recorded prior to the tenant's possession, may prevail, although the latter may have occupied and improved the lands under a claim of title for twenty years lacking a day.

If, in an action of trespass, it should happen, as it often might, especially in the case of wild lands, that the defendant was unable to show that the plaintiff was not in possession and had no title, he might, after satisfying a judgment for damages obtained against him upon such evidence, be compelled to pay damages for the same trespass to the true owner.

No such view of the law has ever obtained in this state. It has always and universally been understood that the mere production of a recorded deed, with no evidence of possession, is insufficient to establish a *prima facie* title even as against a confessed wrongdoer. The precise question was raised and decided in *Graves* v. *Amoskeag Co.*, 44 N. H. 462. The action was a writ of entry. The plaintiff produced and proved duly executed, acknowledged, and recorded deeds, as follows: Harvey to Parker, dated Jan. 5, 1803; heirs of Parker to Palmer, dated Nov. 7, 1842; Palmer to the plaintiff Feb. 4, 1849, and no other evidence. The defendant introduced no evidence. The court ruled that the plaintiff could not maintain his action, and this ruling was sustained. *Bell*, C. J., says,—"Upon the general issue neither party can deny the actual possession of the defendant. Having the possession, the title of

17*

the defendant is perfect against everybody who does not show a better right. All title rests on possession either actual or presumed. No possession is presumed in favor of any person but the sovereign. The state is presumed to be the owner and in possession of all *bona vacantia*, of all lands to which no other person has title, and the possession of the state is held always to accompany its title. If, then, the plaintiff derives his title from the state or sovereign, it is not necessary to show any actual possession until some adverse individual title is shown. In every other case the plaintiff must show an actual possession in himself or in some person under whom he claims, or he shows no title which can avail him. Now in the present case the plaintiff did not show a title derived from the sovereign nor from any person shown to have been in actual possession, and he offered no proof that he had been in actual possession himself of the premises to which he lays claim. The deeds he offered did not show any title. They were evidence of transfers of any title which the grantors had, but they did not show that any of the parties to those transfers had any title, and it was not shown in any other way that either of them had any title. The plaintiff's proof then failed wholly, and the ruling of the court was correct."

The same view of the law prevails in Michigan. *Smith* v. *Lawrence*, 12 Mich. 431.

The statute providing that real estate may be conveyed by deed, "without any other act or ceremony whatever" (G. L., *c.* 135, *s.* 1), merely enables one to convey by deed whatever estate or interest in land he may have and can lawfully convey. It does not purport and was not intended to give such deed the same effect in all respects as a feoffment with livery of seizin at common law, by which the possession necessarily passed. Livery of seizin was the manual tradition of the possession. Although the feoffor was tenant at will or by sufferance, or had nothing in the land except the naked possession gained by an entry made at the time, his feoffment with livery effected a disseizin of the owner (at his election at least), and passed an estate of freehold to the feoffee. A deed of one not in possession cannot effect a disseizin of the true owner even at his election : nothing not in the grantor at the time can pass by it.

But the plaintiff fails even under the Massachusetts doctrine. His *prima facie* case made by the production of the deeds is effectually rebutted by the finding that neither he nor any one under whom he claims ever entered upon the lot.

Conceding that a conveyance under the statute by a collector of taxes is a grant by the government, and that therefore actual seizin passes by it, the deed in order to have that effect must be a valid one—a deed which the collector was authorized to make. If he had no authority from the government to make the conveyance, or if for any reason it was invalid, neither title nor seizin

passed by it: it was not a grant by the government. If, on the other hand, the collector's deed under which the plaintiff claims is valid, that under which the defendants claim is also valid, and, as we have already seen, gives the defendants the better title.

*Judgment for the defendants.*

BLODGETT, J., did not sit: the others concurred.