CASE No. 1002.

## WITHERS v. JENKINS.

Deed in 1867 to A., in trust for B., the wife of grantor, during her natural life, and then to M., the daughter of grantor, for her sole and separate use, benefit and behoof, and the lawful heirs of her body, share and share alike, not liable for the debts or contracts, and free of the control of any husband with whom she may intermarry, and should M. die before B., leaving children, then in trust for such children, and in case M. remains unmarried, or being childless, then to such person as she may appoint as her heir by her last will. B. died in August, 1868. M. married in January, 1869, and died in November following, leaving issue a son, who died soon afterwards. M. lived with her father until a short time before her marriage, when she removed to another house upon the same premises, occupied by her half-brother, and remained there until her death, but received from the premises no rents or profits. The trustee refused to accept. M. and her husband brought action in 1869 against the grantor for the land embraced in his deed, and alleged that he had been in possession, and in receipt of rents and profits. The grantor then answered, denying the execution of the deed. *Held,*

1. That B. took a life estate with an equitable estate in fee conditional in remainder to M., with a power to M. to dispose by will of the whole estate if she never married, or died childless.
2. That a husband is entitled to hold, as tenant by the curtesy, lands in which his deceased wife was seized of a fee conditional.
3. That when curtesy would attach to a legal estate, it should also attach to an equitable one of the same quantity and character, but in both four things are requisite—marriage, actual seizin of the wife, birth of issue and death of the wife; and curtesy may be defeated by the terms of the deed, or by any circumstance which would have determined the wife's estate, if she were living.
4. That the husband of M. was not entitled to an estate by curtesy in this case, because M. had no seizin of the land here granted, as she was never in actual possession, nor ever received any rents and profits.
5. And further, his curtesy was excluded by a necessary implication arising from the terms of the deed.
6. The constitution of 1868 does not affect the questions here arising under this deed, which was executed in 1867.
7. *Wright* v. *Herron*, 6 *Rich. Eq.* 407, approved.

Before PRESSLEY, J., Richland, November, 1878.

On November 6th, 1867, Samuel Jenkins conveyed to Francis Lopez, his executors and administrators, a half-acre lot in the city of Columbia, upon the following trusts:

*In trust*, nevertheless, to and for the following uses and purposes, that is to say, for the sole and separate use, benefit and behoof of my said wife, Mary Jenkins, for and during the term of her natural life, provided she remain a widow in the event of the death of me, the said Samuel Jenkins; and after the death or marriage of my said wife, Mary, then, in trust, for the sole and separate use, benefit and behoof of my daughter, Mary Jenkins, and the lawful heirs of her body, share and share alike, not liable for the debts or contracts, and free of the control of any husband with whom she may intermarry. And should my said daughter, Mary, die before my said wife, Mary, leaving a child or children, then in trust for such child or children, share and share alike; and in case of my daughter remaining unmarried or being childless, then in trust to such person as she may appoint as her heir by her will and testament duly executed, notwithstanding any future coverture.

Samuel, with his wife and daughter, resided upon this land until the wife's death on August 16th, 1868. Mary, the daughter, remained with her father for some time afterwards, when, to make room for boarders, she moved into a house on the same land occupied by her half brother, Mott. There she married Thomas Withers in January, 1869, and lived there with her husband until her death in November, 1869. Samuel has continued to live in the dwelling-house on the land. Mary left issue a son, who died in March, 1870. Lopez refused to accept the trust or to act as trustee. Neither Lopez, Mary Withers or Thomas Withers ever received any rents or profits from the land, upon which were several houses.

In April, 1869, Withers and wife filed their bill of complaint against Samuel Jenkins and Francis Lopez, claiming that Mary Withers, upon the death of her mother, "became entitled to the use and enjoyment" of the said lot of land; and that the said Samuel Jenkins, since that time, had been in the possession of the principal part of the said lot, and in the receipt of the rents and profits of the same; and praying, in substance, that her rights and interests in and to the said lot of land might be protected and enforced.

The answer of Samuel Jenkins to the said bill of complaint denied the legal execution of the said deed, and contested all the rights and interests under it claimed by the said Mary Withers. Lopez was never served with process. Mary Withers having died, Thomas Withers filed a supplemental complaint against Samuel Jenkins, setting out the facts here stated, and claiming to be tenant of this land for life by the curtesy of England; that Samuel Jenkins had had possession since the death of Mary Withers, and demanding possession and rents and profits. The defendant answered; his defences are stated in the referee's report.

All issues of law and fact were referred to F. W. Fickling, Esq., who made the following report:

The issues of law and fact in this action have been referred to me.

The issues of fact are—

1. Whether the alleged deed referred to in the pleadings herein, dated November 6th, 1867, and purporting to have been made by the defendant, Samuel Jenkins, to one Francis Lopez, upon certain trusts therein mentioned, was duly executed and delivered by the said Samuel Jenkins.

2. Whether Mary Jenkins, the daughter of the said Samuel Jenkins, at the date of her marriage with the plaintiff, Thomas Withers, was above the age of twelve and under the age of sixteen years.

3. Whether the said plaintiff, Thomas Withers, did contract matrimony with Mary Jenkins, the daughter of the defendant, Samuel Jenkins, against the will of the said Samuel Jenkins.

I find—

1. That the said deed was executed and delivered by the said Samuel Jenkins.

2. That the said Mary Jenkins was, at the date of her marriage with the plaintiff, Thomas Withers, above the age of twelve and under the age of sixteen years.

3. That the said plaintiff, Thomas Withers, did not contract matrimony with Mary Jenkins against the will of her father, Samuel Jenkins.

The evidence upon which these findings are based is herewith submitted and made part of this report.

The only issues of law involved in the action are : *First.* What estate Mary Jenkins took in the property under the deed ; and, *Second.* What estate her husband took upon her death. And I determine these issues of law as follows :

*First.* That Mary Jenkins took under the deed in question an estate in fee simple conditional. *Second.* That having had issue born, who could have inherited the estate according to the form of the deed, and having died, leaving surviving her her husband, Thomas Withers, that the said Thomas Withers takes an estate for life, in the premises described in the deed, as tenant by the curtesy of England, of his deceased wife, Mary.

It was proved to my satisfaction that the annual value of the premises was $200 per annum. I therefore order and adjudge that the possession of the said premises be delivered to the plaintiff, Thomas Withers, and if the same be refused, that the plaintiff have a writ of *habere facias possessionem*, which the sheriff of Richland county is hereby required to execute. *Second.* That the plaintiff, Thomas Withers, do recover from the defendant, Samuel Jenkins, the sum of $1841.66, for mesne profits from August 16th, 1868. *Third.* That the costs and disbursements of the proceedings be, as agreed by the parties, made a charge and lien upon the property involved in the action.

And I direct that the plaintiff have judgment accordingly.

The case came to trial at the Circuit Court upon exceptions by defendant to the referee's report. The Circuit decree is as follows : .

On November 6th, 1867, defendant conveyed his lot in Columbia to Francis Lopez, in trust for defendant's wife, Mary, and after her death in trust for the sole and separate use of his daughter Mary and the lawful heirs of her body, with other provisions hereafter stated.

The daughter surviving her mother married the plaintiff and bore a child, which, surviving her, died before this action was commenced. Plaintiff claims curtesy in said lot, alleging seizin thereof by his wife in her lifetime. Of such seizin the only

proof is that she remained there after her mother's death in the house with her father, and afterwards in an out-house with her half brother. The trustee did not take or demand possession of the premises, and no rent for the same was ever paid to her. As the referee has not reported any finding of the fact of her seizin, it would be necessary to recommit the case to him, if, under the deed, it be held that such seizin would entitle the plaintiff to curtesy.

Defendant claims that his daughter was not sixteen years old at the time of her marriage, and alleges that he did not consent to the same. If this were so, then, under the statute of Philip and Mary, the husband, by such marriage, could acquire no interest in his wife's estate. But the referee finds that the marriage was not without the consent of the defendant, and I sustain that finding.

The remaining question is one of law, not yet decided in this state. Before the case of Wright v. Herron, many of us agreed with Chancellor Kent that our act of 1791 abolished curtesy in this state. On that point the Court of Errors, in the case of Wright v. Herron, was equally divided, a majority of the law judges holding that curtesy was so abolished. But the case being in equity, was decided by a majority of the Chancellors in favor of the curtesy, and so the old rule was then reversed, and "the law must follow equity." That decision is binding to the extent of allowing curtesy to the husband where the wife held a *legal* estate, but Chancellor Dargan, in his decree, indicates that it would be otherwise in the case of a trust estate, and the Appeal Court does not dissent from his decree on this or any other point.

As the case now before me relates to a trust estate, nothing in any of our decisions compels me to follow the irrational precedent of the English chancery, which allows curtesy but refuses dower in such case. That precedent was the creature of a stern necessity. In England, frequent forfeitures of estates for treason during her civil wars, had compelled a very general resort to settlements in trust, which were not subject to forfeiture. Thereby it became very important that the English courts, in perfecting such settlements, should attach to them every possible incident of legal estates. They, therefore, allowed curtesy in trust estates,

and would also have allowed dower therein, but could not do it, because thereby too many estates would have been unsettled.

But we, in this state, were entirely free in that respect; without danger or injury to any vested interest, we might have allowed dower in trust estates, and yet we decided not to do so. Why, then, should we now adopt a different rule in the matter of curtesy, and thus voluntarily expose ourselves to inconsistency, to which the English chancery unwillingly submitted under pressure of necessity? We have not heretofore hesitated to depart from its rulings whenever the genius of our institutions required it, and now, under our new constitution, it would be a shameful step backward to adopt, for the first time, that rule of the English courts which, in a trust estate, allows to the husband what it refuses to the wife.

Further: even if we adopt the English precedent, yet, in my opinion, the special provisions of the deed in this case very clearly express the grantor's intention to exclude the husband from all interest therein and thus bars his curtesy. The settlement is to the sole and separate use of the wife—not liable for the debts or contracts and free from the control of any husband; if she die before her mother, her children take the whole estate, excluding the husband; if she die childless, leaving a husband, she could not appoint her heirs, and the estate must, in that case, revert to the grantor; but if she remain unmarried, she is authorized in that case to appoint her heir by will, and thus to defeat the reverter. The invalidity of these limitations is not now in question. Whether valid or not, they clearly express the intent of the grantor to exclude the husband from all interest in the said estate, and the cases are conclusive that under such deed the husband has no right of curtesy. In *Roberts* v. *Dixwell*, 1 *Atk.* 606, Lord Hardwicke then admitting that the husband might have curtesy in land settled to the sole and separate use of the wife, yet refused it under the settlement, because other terms therein excluded it.

In *Herle* v. *Greenbank*, 3 *Atk.* 715, he went still further, and held that even without other words of exclusion, that settlement to the sole and separate use of the wife did not allow curtesy to the husband. Sir John Leach, in the case of *Morgan* v. *Mor-*

*gan,* 5 & 6 *Mad.* 248, expresses dissent from Herle *v.* Green-bank. Such dissent was not necessary to the case before him. That was a settlement to the sole and separate use of the wife for life, with unlimited power to appoint by deed or will, and for want of appointment the estate to become hers and her heirs forever. In such case the Vice-Chancellor very rightly held that by the words "sole and separate use," the husband was excluded only during the life of the wife, and that not being wholly ex-cluded he was entitled to curtesy in the said estate. That decision is, therefore, not authority to limit the force of the words "sole and separate use," when they are not confined, as in that case, to the life estate; much less can it be authority to render useless and unmeaning other provisions of a deed which clearly show its intent to exclude the husband. Whatever be the rule in England, I hold—

1. That in this state the case of Wright *v.* Herron is not to be extended so as to allow curtesy in a trust estate.

2. That even if such allowance be permitted in some trust estates, a settlement for the sole and separate use of the wife would exclude that allowance.

3. If the words "sole and separate use" do not, of themselves, exclude the curtesy, it is, nevertheless, excluded by the deed in this case, which, in its other provisions, clearly manifests that intent.

It is therefore adjudged and decreed that defendant, as grantor of the said lot in fee conditional, is now entitled to hold the same as his estate in reversion.

It is further adjudged and decreed that plaintiff is entitled to such rent of the premises as accrued after the death of defendant's wife in August, 1868, until the time of the death of plaintiff's son.

It is further ordered that the case be recommitted to the referee to take testimony and report the time of the death of plaintiff's son, and the amount of the rent then due to him; that upon the filing said report, plaintiff have leave to move at chambers to confirm the same, with further leave to enter judgment and issue execution against the defendant for the amount of the said rent, with costs.

Plaintiff appealed to this court, and the appeal was argued May 20th, 1880.

*Mr. J. D. Pope*, for appellant.

*Proposition I.*—That the question of seizin is not a question of fact, but a conclusion of law, which is derived from the facts found. A feoffment has its foundation in the facts of the ceremony of livery, but the seizin is the *legal result* of the ceremony. The same is the result of conveyances deriving their effect under the statute of uses ; for there, without actual entry or livery of seizin, the bargainer has a complete seizin in deed. *Com. Dig.*, *"Uses," B*, 1 ; 1 *Cruise's Dig.* 12 ; *Shep. Touch.* 223 ; 2 *Bl. Com.* 209 ; *Co. Lit.* 11 *b.* Hence we have the several modes of seizin. *First.* Seizin in deed. *Second.* Seizin in law. *Third.* Constructive seizin in deed. The latter, for all legal purposes, equivalent to an actual seizin. See 1 *Rich. L.* 165 ; 8 *Cranch* 244–249 ; 1 *Bay* 107 ; 4 *McC.* 253. Is not, then, the referee right when he uses the words, "Mary, having had issue born who could have inherited the estate according *to the form of the deed,"* &c.? That is to say, there was seizin in Mary by deed.

1. Was not Lopez *seized* in fee as trustee under the deed? The deed conveys to the trustee by the words " grant," &c., to his " executors and administrators." The trustee takes the *legal estate* (notwithstanding the want of the technical words) as governed by the object and scope of the trust. *Vide Lewin on Trusts*, 249–250 ; *Hill on Trustees.* But, says the Circuit decree, " the trustee did not take or demand possession of the premises and no rent for the same was ever paid to her." We reply, a trust never fails for the want of a trustee. *Withers* v. *Jenkins*, 6 *S. C.* 125.

2. Was not Mary seized of the equitable estate? That no rent was ever paid to Mary, can, in no way, affect the question of her seizin. 4 *Hare* 413 ; *Lewin on Trusts* 622, 623 ; 8 *Cranch* 246. Mary was a minor and lived upon the land, as is admitted by the decree. The confusion of the decree arises from applying good doctrine in the wrong way. Had Mary, the mother and life tenant, been in possession, there could have been no seizin in Mary, the daughter. But the possession of Samuel,

the father, could have no such effect. With the death of the life tenant no estate interposed to prevent seizin in *law* and in *fact* meeting in Mary, the daughter.

*Proposition II.*—The next proposition we advance is, that Mary, the daughter, took under the deed in question an estate in fee simple conditional. This is the legal conclusion of the referee. The Circuit decree does not express any dissent from this proposition, but seems to take it for granted. It will be well, however, to fortify it. *Vide* 4 *Kent* 221, *et seq.* For the collected authorities, see foot-note of Chancellor Wardlaw in 5 *Rich. Eq.* 441 ; 2 *Jarm. on Wills* 277, 280, 284, 286, 291.

*Proposition III.*—Our third proposition is, that curtesy is allowed in estates in fee conditional at the common law. The pre-requisites are : *First.* Seizin. *Second.* Marriage. *Third.* Death of wife. *Fourth.* Birth of issue capable of taking the inheritance. The conditions are here all present. *Bacon's Ab.,* *tit.* " *Curtesy ;*" Chancellor Johnstone in 3 *Rich. Eq.* 564, 568. In that case it was held there was no " curtesy," because there was *no fee conditional.* 5 *Rich. Eq.* 441, 446 ; 6 *Rich. Eq.* 406. The Circuit decree does not quite undertake to *overrule* Wright *v.* Herron. But in Wright *v.* Herron the law did *not* follow equity, but equity still followed *the law.* While sitting in the Court of Errors the judges of that court were, in fact, all *law judges.* " Curtesy " was the recognized law of the state as a part of its jurisprudence from the earliest times. It was attempted in Wright *v.* Herron to establish that the old recognized law was abolished by the act of 1791. The Court of Errors refused so to declare. The law of " curtesy " still stood and equity followed it. Since that decision curtesy has been considered in South Carolina a *rule of property.* The Circuit decree seems reluctantly to so admit, but *refuses to permit equity to follow the law.*

*Proposition IV.*—Our fourth proposition is, that curtesy to the husband is allowed in trust estates, and is not confined to *legal* seizin only.

Chancellor Dargan, in Wright *v.* Herron, does say, by a *slip of the pen,* (for it could be nothing else,) and not a part of the case, that dower and curtesy " attach upon legal, not upon trust

estates." Chancellor Dargan must be deemed to have intended to say that curtesy did not attach to the *ancient use*. It is elementary (4 *Kent* 30, 31, 32,) that dower did *not attach* to a trust estate, and that curtesy *did so attach*. *Vide Lewin on Trusts* 621. This was the recognized distinction; and in England, instead of bringing curtesy down to the *status* of dower in the *legal* estates, dower was lifted up to the *status* of curtesy in *trust estates*. 3 *and* 4 *Wm. IV., ch. CV.*

See 3 *Atk.* 715; 1 *Atk.* 666; *Lewin on Trusts* 621; 5 *Mad.* 408; 2 *Vern.* 536; 4 *Hare* 400; 1 *P. Wms.* 108; 3 *Atk.* 469; 7 *Viner, tit.* " *Curtesy;*" 14 *Sim.* 125; 4 *Kent* 28–34; 8 *Paige* 643; 4 *Day* 298.

In Virginia, by statute, husband has curtesy in trust estate. 1 *Sumn.* 128; 17 *Mo.* 228; 7 *Md.* 26; 23 *Penna. St.* 231; 1 *Cald.* 641; *Wright* v. *Herron, supra*. In the light of the cases, read the words of the deed in connection with the language of the Circuit decree, that " the provisions of the deed in this case very clearly express the grantor's intention to exclude the husband from all interest therein, and thus bar his curtesy." See *Lewin on Trusts* 623; 2 *P. Wms.* 316; 3 *Eq. Cas. Ab.* 730, cited by Kent in 8 *Paige* 643, and note to this last case. So far, from the words of the deed excluding curtesy, it is just the other way.

*In Conclusion.*—If there ever was a reason why curtesy should have been deemed not to exist in South Carolina, that reason has ceased. *First.* The wife now holds absolutely her own estate, and may strip the husband to the last penny of her estate. *Second.* Curtesy becomes but a precarious compensation to the husband out of the wife's estate for her absolute right of dower in his.

*Mr. D. B. De Saussure*, contra.

*Mr. J. P. Carroll*, in reply.

A re-argument was ordered by this court, and the attention of counsel was asked to this point:

What effect has the late constitutional provision (as to the con-

trol given to a married woman over her own property,) upon the rights of her husband as tenant by the curtesy?

The case was re-argued in full by the same counsel, January 12th, 1881.

March 18th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. On November 6th, 1867, the defendant made a deed of trust. [See provisions in the " case."] Mary Jenkins, the wife of defendant, died in lifetime of defendant, and before Mary, the daughter, and disappears entirely from the case. Mary, the daughter, married the plaintiff in January, 1869. Mary, the daughter, died in November, 1869. She left a male child at her death. This child died in March, 1870, leaving the plaintiff, his father, surviving, who now claims an estate of curtesy under the deed.

Is the plaintiff (appellant) entitled to an estate, by the curtesy, in the real property mentioned in the pleadings? is the main question in this case.

An estate by the curtesy, or as it is more commonly called, by curtesy, is defined by Mr. Washburne as succinctly and as clearly, perhaps, as by any other writer upon this intricate subject. He says that " it is the estate to which a husband is entitled, upon the death of his wife, in lands and tenements of which she was seized in fee simple or in fee tail during coverture, provided they have lawful issue, born alive, which might have been capable of inheriting the estate. It is a freehold estate for the term of his natural life." *Book I., ch. VI., p.* 148. He says, further, that " equity, following the law, holds that where the wife is *cestui que trust* in fee simple or fee tail, the husband is entitled to curtesy in the trust estate in the same manner as in the legal estate." *Watts* v. *Ball,* 1 *P. Wms.* 109 ; *Co. Lit.* 29 *a, n.* 165.

This estate is of very ancient origin, and it has prevailed from an early period, with well-defined qualities and incidents, not only in England but in other countries. It came to us with the common law, and before the act of 1791, it no doubt would have been enforced here as to all the estates to which it was an incident, as a part of the common law.

The act of 1791, however, in abolishing primogeniture and

providing for the distribution of intestate estates, enacted certain provisions in conflict with this right as to fee simple estates. It declares in the sixth section " that on the death of any married woman, the husband shall be entitled to the same share of her real estate as is herein given to the widow out of the estate of the husband." Upon the construction of this act it has been held that the husband is not entitled to his curtesy in the fee simple estates of his wife, or, at least, that he is put to his election. *Gray* v. *Givens*, 1 *Hill's Ch.* 511. This is upon the ground that the interest which the husband takes under the act is more important than the curtesy, and, besides, the two could not be enjoyed together. They are in conflict, and the curtesy has practically given way since the passage of this act. If, then, the wife of the appellant here had taken under the deed an absolute fee simple, either at law or in equity, we would have but little difficulty in deciding this question. In fact, we suppose the question would not have been made.

The estate of the wife, however, is not a fee simple. As we construe the deed it is a fee conditional at common law—that estate out of which, in England, the statute *de donis* constructed fee tails; but the statute *de donis* has never been adopted in this state, therefore the common law estate of fee conditional stands untouched with us, and it has been often recognized by our courts.

Chancellor Wardlaw, in Wright *v.* Herron, said : " Whatever diversity there may be among judges of this state concerning the implication of a fee conditional, and as to some of the incidents of the estate, the existence of the estate itself, with most of its attributes, according to the common law, has been recognized by many decisions in our own courts." He refers to numerous cases in a note. 5 *Rich. Eq.* 449.

There is no doubt, either, as to the fact that this estate may exist in equity as a trust or use as well as in law, and, when thus existing in equity, is subject to all the rules of descent and otherwise, and is accompanied with most of the incidents and attributes applicable to such estates at law.

We think that in this case the wife of Samuel Jenkins took a life estate under the deed, with an equitable fee conditional in

remainder to his daughter Mary (afterwards the wife of the appellant,) with a power in her to dispose by will of the whole estate in the event that she never married or died childless. This is the plain language of the deed, and it needs the application of no abstruse rules of interpretation or construction to reach that conclusion.

The deed in the first instance declares the estate to the wife of the grantor for and during the term of her natural life. This gave her a life estate. After her death or marriage, then to his daughter Mary and the lawful heirs of her body. This is strictly a fee conditional at common law. But should she die, remaining unmarried or childless, then to such persons as she might appoint by will as her heirs. This conveys a power of appointment.

The full text of the deed will be seen in the " case," but enough is referred to here to determine the quantity of the estate given to the different parties mentioned. And we do not suppose that, had this deed conveyed legal estates simply, without the intervention of a trustee, that there could have been any difference of opinion as to the estates granted, *i. e.*, a life estate to the wife and a fee conditional in remainder to the daughter, with the power, under certain contingencies, to the daughter to appoint by will such person or persons, as she might see proper, to take after her death.

The power of appointment given to Mary did not enlarge the fee conditional to an absolute fee simple in her. This power was not an absolute power, but one which was to be exercised only upon the happening of certain contingencies. These contingencies never happened, and, therefore, the fee conditional was never defeated by the exercise of the power. Nor was it enlarged in Mary by the grant of this power, because such enlargement never takes place where the first estate is distinctly marked out and defined, such as a life estate or other estate less than a fee simple; and where the exercise of the power is limited and restricted to the happening of contingencies, to have the effect of enlarging the first estate, it must be indefinite and the power must be absolute and unconditional. *Pulliam* v. *Byrd*, 2 *Strob. Eq.* 134.

The conclusion of the court is, that Mary took a fee condi-

2 Q

tional in equity. It is elementary that the term "heirs of the body" are precisely the terms required to be used to describe and measure this estate, while the word "*heirs*," without qualification, creates a fee simple.

The curtesy of the husband, as a general rule, will attach to a fee conditional in the wife, whether his estate be an estate in law or a trust in equity. This is the general rule in England and many of the states of the Union.

In our state, in the case of *Wright* v. *Herron*, 6 *Rich. Eq.* 407, it was held to attach to a fee conditional *at law*. True, the Court of Errors failed to agree in that case; but when it was returned to the Court of Chancery three of the learned Chancellors— Wardlaw, Johnstone and Dargan—to one, sustained this estate. This was upon the ground that the act of 1791, as to distributions, did not touch fee conditionals. That act applied to fee simple estates, and fee conditionals were left as they existed at common law—certainly as to their descendible quality. And it followed as a necessary consequence, that the other incidents to such estates had not been disturbed by that act. We think that the case of Wright *v.* Herron is authority, not only as a decision, but upon principle.

We have already seen that there is no difference between legal and equitable estates as to their general incidents and qualities, and, consequently, it would seem, that where the curtesy would attach to a legal estate, it should also attach to an equitable one of the same quantity and character. And it has been so held frequently, as will be seen from cases hereinafter cited.

These are the general rules applicable to this subject; but before the curtesy can attach in any case, either legal or equitable, fee simple or fee conditional, all the authorities agree that four things are requisite, viz., marriage, actual seizin of the wife, issue and death of the wife. A failure in any one of these will prevent the curtesy from attaching, but when they all occur, the law vests the estate in the husband immediately on the death of the wife, without entry. This estate is said to be *initiate* on issue had, and consummate on the death of the wife.

Seizin of the wife is one of the essential requisites. Seizin was formerly understood to be a corporeal investiture by actual

livery of seizin. How this was effected it is not now necessary to explain, as it passed away after written muniments of title came to be used. The delivery of a deed, where there is no adverse possession or claimant, has been generally regarded as a sufficient seizin, on the ground that the possession follows the title. *Green* v. *Liter*, 8 *Cranch* 229. This has been considered sufficient as to legal estates to authorize the attaching of the husband's curtesy. And as to equitable estates, the receipt of the rents and profits by the *cestui que trust* has been held to constitute an equitable seizin for the same purpose.

There is another important qualification affecting the right of the husband to his curtesy, especially as to the equitable estates of his wife, and that is: This right may be excluded by the grantor, and this will take place where the terms of the deed clearly show that such was the intention of the grantor, either by express declaration of such intent or by necessary implication from the language employed.

It has been held, also, as another important incident or qualification of estates of curtesy, that any circumstance which would have defeated or determined the estate of the wife, if living, will, of course, put an end to the curtesy, as this right will fall and be defeated with the estate out of which it was to be derived. And this applies to both legal and equitable estates of the wife. The derivative estate will fall with the estate which gives it its birth.

The principles laid down above will be found in 4 *Kent*, ch. *LXXX.*, p. 28, *et seq.*; 1 *Greenl. Cruise*, ch. *II.*, p. 136, *et seq.*; 1 *Washburn* *130, *et seq.*, and numerous cases referred to in the notes.

The difficulty in all the cases like this is not so much in establishing the general principles, as these are found fully discussed and plainly set forth by the learned authors mentioned, and others, as well as in the decisions of able judges in the different states; but it consists in the application of these principles to the special facts and circumstances which may surround and attend a case under consideration.

This is the difficulty here. We have seen that the estate of the wife of the appellant was a fee conditional trust estate. There

was coverture, and birth of issue capable of inheriting this estate. This issue has since died while an infant, thus ending the fee conditional which was created by the deed of Samuel Jenkins, and, under the law, reverting the whole estate to him. *Wright* v. *Herron,* 5 *Rich. Eq.* 443.

Now, was the wife of the appellant ever seized? If so, does the deed or not clearly indicate an intent and purpose on the part of the grantor that the curtesy of the husband should be excluded? And, lastly, if the curtesy did attach, what effect has the subsequent death of the issue had upon it? Is that such a termination of the primal estate as to have destroyed the derivative? These are the questions which must now be considered.

The wife, according to the old English law, must be seized in fact and in deed, and not merely à seizin in law, of an estate of inheritance, to entitle the husband to his curtesy, says Chancellor Kent, 4 *Com.* 30, *citing Co. Lit.* 29 *a; Mercer* v. *Seldon,* 1 *How.* (*U. S.*) 37. He adds: "This is still the general rule at law, though in equity the letter of it has been relaxed by a free and liberal construction."

The circumstances of this curtesy have justly required some qualification of the strict letter of the rule relative to a seizin in fact by the wife. And if she be the owner of waste, uncultivated lands, not held adversely, she is deemed seized in fact, so as to entitle her husband to his right of curtesy.

At common law the husband could not be the tenant by the curtesy of a use; but it is now settled otherwise in equity, and the husband may be tenant by curtesy, if the wife has an equitable estate of inheritance, notwithstanding the rents and profits are to be paid to her separate use during coverture. 1 *Atk.* 607; 4 *Kent* 30.

The receipts of the rents and profits, it is stated, is a sufficient seizin of the wife. *Morgan* v. *Morgan,* 5 *Madd.* 408. Mr. Washburn, vol. I., *130, says: "In respect to the seizin of the wife, it must, in general terms, be of an estate of inheritance; but this must be either a legal or equitable one. In giving effect to the estates under the statute of uses, Courts of Equity intended to follow the law, and in most respects have followed it in regard to the nature and incidents of such estates. Among these was

the right of curtesy, and husbands of *cestuis que trust* were allowed to take their estates by curtesy if they were estates of inheritance of which the wife had what answered in equity to a seizin at law of legal estates in possession. And the receipt of rents and profits by the wife as such *cestui que trust*, during coverture, is ordinarily sufficient seizin in equity to give the husband curtesy." *Morgan* v. *Morgan*, 5 *Madd.*, *supra*. But, he adds, " it does not seem to be sufficient seizin of a trust estate to give her husband curtesy thereof." That the wife had the rents and profits by the terms of the trust deed to her own and separate use, her seizin, in such case, not enuring to the benefit of the husband, he cites *Hearle* v. *Greenback*, 3 *Atk.*; *Sweetapple* v. *Bedon*, 2 *Vern.* 537, *n.* It seems, then, that nothing less than the receipt of the rents and profits by the wife, during coverture, will constitute an equitable seizin in a trust estate. ..

Did the appellant's wife ever receive any portion of the rents and profits of this property? It appears from the record that the original proceeding in this case was instituted to recover the lot and the rents and profits, it being charged in the complaint that Jenkins was in possession of the lot and had received all the rents and profits.

Jenkins is an adverse claimant, denying the validity of the deed, and contesting all the claims of appellant. If the wife's estate was a legal estate, these facts, under the decisions, would negative seizin, because where there is an adverse claimant, and especially where he is in possession, the possession does not follow the title to such extent as to constitute a seizin in the wife, and under such circumstances the curtesy of the husband could not attach even to a legal estate, much less could it attach in a trust estate like this, where the adverse claimant is in possession, denying the trust and refusing to accord his rents and profits. *Parker* v. *Carter*, 4 *Hare* *414; *De Gray* v. *Richardson*, 3 *Atk.* 469. It seems that the *cestui que trust* has never received any portion of the rents and profits. She may have been entitled to them, but her failure to receive them prevents seizin, and a failure of seizin prevents curtesy.

Did the grantor intend to exclude the curtesy? We have seen from the authorities that a grantor has the right to do this, and

that when the question is raised it is a question of intention. In one case, where he expressly excluded the husband from the right of curtesy, this exclusion was enforced. *Bennet* v. *Davis*, 2 *P. Wms.* 310, and *Clark* v. *Clark*, 24 *Barb.* 582. It has been held in several English cases that simply declaring that the trust is for the sole and separate use and benefit of the wife does not necessarily raise the implication that it was the intention of the grantor to cut off the curtesy, and in such cases the equitable seizin of the wife, by the receipt of the rents and profits, would enure to the benefit of the husband and save his curtesy.

Lord Hardwick, in the case of *Roberts* v. *Dexwell*, 1 *Atk.* 607, held that the husband might lose his curtesy in an estate devised to the wife for her separate use. His opinion in *Hearle* v. *Greenback*, 1 *Ves.* 303, is somewhat in conflict with this, and the two can scarcely be reconciled; but the doctrine seems to be well settled in accordance with the decision of Roberts *v.* Dexwell, and if there was nothing more in this deed than that the estate was settled to the sole and separate use of the wife of respondent, that would not be an insuperable barrier in his way—in fact, it would present no objection to his claim; but the deed goes further, and in very emphatic terms declares that the estate given to his daughter Mary shall not be liable for the debts or contracts of any husband with whom she may intermarry and shall be free from his control. Now, can this express inhibition be limited only to the estate existing during the life of the wife? In endeavoring to reach the intention of the grantor, is that a fair interpretation of the terms he used in his deed? He had not only the welfare of his daughter in his mind, as it appears, but he went beyond her and was looking to the issue of her body—his grandchildren—his own descendants—and his deed was as much for their benefit as for hers, and he expressly excluded any husband which she might have from all control of the property conveyed. We think this was about as strong as the case of *Bennet* v. *Davis*, *supra*, where the curtesy in terms was denied.

Mary died in November, 1869, leaving one son living, who died in March thereafter, while an infant. The fee conditional terminated with the death of this son, and, under the law, the whole estate has reverted to the respondent—the grantor—who

now is invested with the legal title in fee simple, and is in possession.

As a general rule, where the primal estate determines the derivative estate, whether it be dower or curtesy, also ceases, upon the maxim *cessante statu primitivo cessat derivativus.* This has been held to apply generally to determinable deeds and not to limitations over. In this last class of cases it is said the limitation merely shifts the estate from one person to another, and leaves the prior seizin undisturbed. The limitation over takes effect and the estate next in expectancy vests without entry, and the entry is preserved. 4 *Kent* *34. But the cases of estate tail, determining by failure of issue, and of a fee determining by executory devise or shifting use, are exceptions to the general rule denying curtesy or dower after the determination of the principal estate.

These distinctions are quite abstruse and subtle, and it seems anomalous that in this case, after the primitive estate, out of which, but for the other facts already discussed, the appellant might claim by curtesy, has, by the death of his son, ceased and is gone forever, and the fee has returned to grantor, who is now and has ever been in possession, yet that he should be still entitled to hold the property during his life as tenant by curtesy; but such appears to be the law, and if there was nothing else in the way but this, the appellant would be entitled to have the decree below reversed and his tenancy by curtesy enforced.

But we think there was no seizin of the wife in this case; and we further think that there is a necessary implication arising from the terms of the deed, that it was the intention of the grantor to exclude the curtesy of any husband that might intermarry with his daughter; and upon these grounds we sustain the result of the decree of the Circuit judge.

The deed in this case was executed before the adoption of the constitution of 1868, and before the passage of any act on the subject of the rights of married women. The rights of the parties, if any, had vested, and we do not see how the constitution of 1868 or the acts referred to could affect this question. If the estate of Mary became executed in her, because after the adoption of the constitution a trustee was no longer necessary, and

the trust estate became a legal one, yet Samuel Jenkins has been at all times in possession; and even in this case there would be no legal seizin in the wife, and the intent to exclude the curtesy would still exist in the deed.

While we cannot agree to the reasoning by which the Circuit judge reaches his conclusion, we think his conclusion is right. The decree is affirmed and the appeal dismissed.

McIver and McGowan, A. J.'s, concurred.